ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.* TOMLINSON.

Opinion delivered July 6, 1901.

1. CARRIER—NEGLIGENCE.—Deceased escorted a friend to his coach, which was open for passengers, and on his return, while crossing an intervening track, was struck and killed by an engine, which was being backed at a high rate of speed without efficient lookout and without warning. *Held*, that, whether deceased was on the track as a mere licensee or by implied invitation of the company, the latter was guilty of negligence. (Page 494.)

2. CONTRIBUTORY NEGLIGENCE.—If deceased, to keep off rain, enveloped his head in the cape of his coat, so that he could neither see nor hear an approaching engine, and in this condition stepped on defendant's track, and was killed by an engine which he would have seen or heard had his eyes and ears not been covered, he was guilty of contributory negligence. (Page 495.)

3. CARRIER—LIABILITY TO PASSENGER'S ESCORT.—One who goes into a passenger coach to assist a friend, who desired to take passage and needed assistance to reach and enter the coach, goes upon an implied invitation of the carrier, which should use at least ordinary care to avoid injuring him while there. (Page 495.)

4. INSTRUCTIONS—UNDISPUTED FACTS.—Instructions should not submit undisputed facts to the jury for decision. (Page 497.)

5. CARRIER—DUTY TO LICENSEE.—One who, after having escorted a passenger to his coach, returns to such coach without any necessity therefor and for his own pleasure merely, is a licensee, and cannot be said to have returned upon an implied invitation of the carrier, which owes him no duty save to do him no wanton injury and to comply with the statutory requirements as to keeping a lookout. (Page 497.)

6. CONTRIBUTORY NEGLIGENCE—WHEN QUESTION FOR JURY.—An instruction to the effect that if deceased accompanied a departing passenger, who needed assistance, to his coach at a time when it was open for passengers, and when passengers were passing back and forth between the depot platform and the coach with the apparent acquiescence of the railroad company, then deceased was rightfully upon the premises, and it was not incumbent on him to be on the lookout for danger, if under the circumstances he had no reasonable ground to. suspect that danger was to be apprehended, is erroneous where the train was not to leave for half an hour, and other trains were constantly passing; it being a question for the jury in such case whether deceased was guilty of contributory negligence. (Page 497.)

7. SAME—INSTRUCTION.—Where there was evidence that, before attempting to cross defendant's track, deceased, to protect himself from the rain, drew up the cape of his coat over his eyes and ears, so that he could see directly in front only, it was error to instruct the jury that if deceased, in ·attempting to protect himself from the rain, did only what a man of ordinary prudence would have done under similar circumstances, he was not guilty of negligence. (Page 500.)

Appeal from Saline Circuit Court.

ALEXANDER M. DUFFIE, Judge.

### STATEMENT BY THE COURT.

Action by Regina Tomlinson, widow and administratrix of the estate of Arthur Tomlinson, against the St. Louis, Iron Mountain & Southern Railway Company, to recover damages for his death. The facts are stated in the opinion. On the trial in the circuit court the presiding judge gave to the jury the following instructions at the request of the plaintiff:

"1. If you find from a preponderance of the evidence that the defendant railway maintained a station or depot for the reception and discharge of passengers from its cars at Little Rock on July 8, 1894; that on that day it placed passenger coaches for the reception of passengers in such a manner as to make it necessary to cross its railroad track or tracks in passing to and from the coaches and station platform; that Lieutenant Tomlinson accompanied to one of these coaches a departing passenger, who needed assistance, or that he visited the coach to look after the comfort of such passenger when the coaches were open and ready for the reception of passengers, and when passengers were passing back and forth between the

platform and coaches with the apparent acquiescence of the railway, then the court instructs you that Lieutenant Tomlinson was rightfully upon the railway's premises under an implied assurance that no engine or train would be permitted to run over an intervening track, unless the railway should use ordinary care and prudence to give timely and ample warning of the approach, and that he had a right to lessen his own watchfulness; and it was not incumbent upon him to be on the lookout for danger if, under the circumstances, he had no reasonable ground to suspect that danger was to be apprehended. If you further find, from a preponderance of the testimony, that Lieutenant Tomlinson, after seasonably visiting the coaches for either of the purposes above mentioned, while returning therefrom to the station platform by the usual route, in the exercise of ordinary care and prudence, was killed by an engine operated by the defendant railway without the observance of ordinary care and caution, your verdict should be for the plaintiff.

"2. What would be due care under some circumstances would be negligence under others. Negligence is the failure to use the care which a reasonably prudent man would determine, in view of all the circumstances, that the situation demands. If you find that the railway failed to exercise such care, you should find that it was guilty of negligence.

"3. If you find from a preponderance of the evidence that the defendant railway backed one of its engines over a track between the coaches and the platform, without guard or lookout, or not having such guard or lookout, without signal or warning, which, under the circumstances, would reasonably attract the attention of a man of ordinary prudence, who was rightfully engaged in passing between the coaches and station platform, the railway was guilty of negligence, and you should so find.

"5. The burden of proving in a case like this that the deceased was guilty of negligence which contributed to his injury rests upon the railway company, unless the plaintiff's evidence proves it. If, therefore, you find that it is not proved by a preponderance of the evidence in the case that Arthur Tomlinson failed to exercise that care, caution and prudence which would be expected to be used under like circumstances by persons possessing ordinary care and prudence, you must find that he was free from negligence.

"6. If you find from a preponderance of the evidence that at the time Lieutenant Tomlinson left the coach it was raining, and that, in undertaking to protect himself from the rain, he did only

what a man of ordinary prudence would have done under similar circumstances, you will find that Tomlinson was not guilty of negligence in that respect.

To the giving of these instructions the defendant excepted. There was a judgment in favor of the plaintiff for $20,000, from which defendant appealed.

*Dodge & Johnson,* for appellant.

Under the evidence appellant was guilty of contributory negligence. Tomlinson was not a passenger. 96 Pa. St. 267; 5 Am. & Eng. Enc. Law (2d Ed.), 486; 48 Ark. 493; *id.* 369. Appellant owed him no duty except not to wilfully injure him. 48 Ark. 493; Thompson, Carr. Pass. 104, 105; 71 Ill. 500; 59 Pa. St. 129; 36 Ark. 50; *id.* 376; 41 Ark. 549; 46 Ark. 535. He was negligent in being where he had no right, and hence he cannot recover. 40 Ark. 322; 101 Pa. St. 258; 29 Oh. St. 367; Ell. Railroads, § 1248. But, if it be conceded that Tomlinson was a licensee by sufferance, he took his license with its incident risks. Elliott, Railroads, § 1250. Appellant's only duty to him was to refrain from wanton or wilful injury to him. 66 N. Y. 246; 102 U. S. 584-5; L. R. 4 Exch. 254. As to measure of care due by appellant, see further: 58 Wis. 656, 657; 51 Mich. 238; 34 N. J. L. 472; 10 Allen, 372; 29 Oh. St. 365; 59 Wis. 150; 10 All. 372; 99 Mass. 210; 59 Pa. St. 129; 47 Ind. 43; 111 Pa. St. 258; 84 Ga. 1. Tomlinson was guilty of contributory negligence such as to bar recovery. 154 Mass. 403; 155 Mass. 44; 165 Mass. 264; 156 Mass. 180; 158 Mass. 10; 4 L. R. A. 632; 97 Mass. 275; 135 Mass. 225; 12 W. N. C. 348; 122 Pa. St. 58; 23 W. N. C. 189; 40 La. Ann. 800; 22 Minn. 22; 74 Ia. 607; 74 Fed. 299; 44 S. W. 703; 57 Fed. 926; 73 Fed. 627; 57 Fed. 926; 61 Ark. 655; 150 U. S. 248; 12 Am. & Eng. R. Cas. (N. S.), 460. The first instruction asked by plaintiff was erroneous in that it told the jury that Tomlinson "had a right to lessen his own watchfulness, and it was not incumbent on him to be on the lookout for danger, if, under the surrounding circumstances, he had no reasonable grounds to suppose that danger was to apprehended." 48 Ark. 493; 54 Ark. 431; 55 Ark. 430; 55 Ark. 428; 56 Ark. 434; 56 Ark. 278; 59 Ark. 130; 61 Ark. 620; 62 Ark. 156, 159; 61 Ark. 549; 64 Ark. 368; 65 Ark. 67.

*Cockrill & Cockrill,* for appellee.

There being evidence to sustain the verdict, it will be sustained. 53 Ark. 75, 80; 54 Ark. 229, 234; 14 Ark. 21; 25 Ark.

90; 17 Ark. 385; 13 Ark. 285; 13 Ark. 694. The evidence warranted a finding of negligence on the part of the railway. 65 Ark. 235; 48 Ark. 491; 48 Ark. 366; 55 Ark. 428; Deering, Neg. 248, 251; 54 Ark. 159; 12 Am. & Eng. R. Cas. (N. S.), 370, note; 122 N. Car. 832, 840; 27 S. W. 44; 25 So. Rep. 338; 26 N. J. Eq. 474. It is not incumbent upon a passenger, who is required to cross a railroad track at a station to reach his train, to be on the lookout for danger, unless he is specially apprised that danger is to be apprehended. 59 Ark. 122; 168 U. S. 339; Hutch. Carr. § 616; Beach, Contr. Neg. § 160; Fetter, Carr. Pass. § 136; 149 U. S. 43; 78 N. Y. 338, 334; 113 N. Y. 363; 84 N. Y. 246; 60 Miss. 126; 18 Colo. 368; 72 Md. 519, 530; 60 Md. 449, 463, 465; 88 Pa. St. 327, 333, 334; 27 N. J. Eq. 550; 26 N. J. Eq. 474; 105 Mass. 203; 31 Ind. 408; 88 Fed. 455, 460; 40 N. Y. Supp. 783; 60 Ill. App. 265; 59 Ill. App. 21; 60 Ill. App. 525; 39 La. Ann. 649; 36 Kan. 769; 2 S. W. 181; 3 Tex. Civ. App. 89; S. C. 22 S. W. 242; 41 Mich. 667; 161 N. Y. 232; S. C. 55 N. E. 819; 80 Ill. App. 675; 122 N. Car. 905; 80 Ala. 600. As to duty in general to passengers and prospective passengers at depots, see: 88 Fed. 455; 12 Am. & Eng. R. Cas. 170. A passenger's escort may rely upon the railroad's implied assurance of safety, just as the passenger can. Thomp. Carr. 106; 72 Mo. 392; 64 Tex. 251; 31 S. W. 737; 113 N. Y. 383; 64 Miss. 584; 36 Kan. 769; 91 Fed. 466, 472; 54 N. Y. Supp. 766; 59 Pa. St. 129, 143; 51 Mich. 501; 65 Ga. 370, 375; 119 Ind. 542; 59 Mo. 27; 6 Gray, 64; 59 Me. 183; 42 La. Ann. 1156; 34 La. Ann. 648; 46 Ark. 182, 196; 60 Ark. 106, 110; 122 N. C. 832; 52 S. W. 7, 11. Tomlinson was under duty to look and listen. 3 Ell. Railroads, §§ 1171, 1157; 29 Atl. 258; 118 Ind. 305; 1 Exch. 21; 122 N. Y. 234; 96 N. Y. 676; 80 Me. 430; 38 Fed. 15; 45 Oh. St. 678; 175 Ill. 183; 10 Allen, 368; 24 Oh. St. 631; 54 N. Y. Supp. 766; 64 Miss. 584. Appellant impliedly invited Tomlinson to pass over the track. 54 Ark. 159; 59 Ill. App. 21; 39 La. Ann. 649. The question of contributory negligence was for the jury. 9 Am. & Eng. R. Cas. (N. S.), 166; 152 U. S. 107, 113; 168 U. S. 339, 348; 93 Fed. 384. Tomlinson was not guilty of contributory negligence, as a matter of law, merely because of the use he made of his cape. 92 Fed. 846; 163 U. S. 353, 356; 4 Am. & Eng. Enc. Law, 76, note 2; 74 Ill. App. 387, 396; 36 S. W. 319; 79 Wis. 404; 37 Hun, 295; 59 N. Y. 631; 155 Mass. 190.

RIDDICK, J., (after stating the facts). This is an action brought by the widow and administratrix of the estate of Arthur Tomlinson, deceased, to recover damages for his death, which plaintiff alleges was caused by the negligence of the employees of the defendant railway company. The death of Tomlinson took place under the following circumstances: In July, 1894, there was a meeting in Little Rock of several military companies for the purpose of a competitive drill. One of the companies, the Indianapolis Light Artillery, was scheduled to leave Little Rock on its return the evening of the 8th of July. To accommodate the members of this company, the Iron Mountain Railway Company had two passenger coaches placed on its second and third tracks from the depot in Little Rock, Arkansas. Between these coaches and the depot there was the main track of the railroad, and possibly a side track also, which passengers were compelled to cross in order to reach the coaches. Tomlinson was lieutenant of a company from Washington, D. C., which had also attended the drill, and he was acquainted with the officers of the artillery company. Late in the afternoon of the day of their departure he accompanied an officer of the artillery company to the depot, and assisted him to his coach. This officer was somewhat intoxicated by strong drink, and needed assistance, and the theory of the plaintiff is that Tomlinson accompanied him for that purpose. The time for the departure of the train had not arrived, and the coaches were not attached to the train, but they were open for the reception of passengers, and Tomlinson and his friend entered the coach, passing on their way over the intervening main track of the railway. There is some conflict in the evidence as to whether Tomlinson made a second visit to the coach in which his friend was seated, but, in any event, on his return from the coach to the depot, either the first or second time, he was struck by the tender of an engine of the company, backing along the main track, and was instantly killed. This was after 7 o'clock in the afternoon, and, though objects were visible, it was raining and rather dark for that time of day. As before stated, the coaches from which Tomlinson was returning were open for the reception of passengers, and there was evidence tending to show that about this time, with the apparent acquiescence of the company, passengers and their friends were passing to and fro between the station and the coaches. There was also evidence to show that, although this was known to the employees of the company, the engine at the time it struck Tomlinson was

being backed at a rapid speed along the main track, between the coaches and the depot; that no efficient lookout was kept, and that no warning of its approach was given by bell or whistle, or in any other way. This evidence clearly justified the jury in finding that the employees of the company were guilty of negligence in backing the engine in that manner, at such a time, between the coaches and the depot. If the facts above referred to are true, the employees of the company were guilty of negligence, without regard to whether Tomlinson be considered a mere licensee or as one on the premises of the company by an implied invitation of the company. The law requires that a lookout be kept for trespassers, and certainly it was the duty of the employees of the company to have kept a lookout in this instance, and whether they did so or not was, under the evidence, a question for the jury. If the only question in the case was whether the company was negligent, we could say without any hesitation that the evidence justified a finding in favor of plaintiff.

But, conceding that the negligence of the company contributed to the injury of Tomlinson, there is, under the evidence in this case, the further question whether he was not also guilty of negligence contributing to his injury. It is the theory of the defendant that Tomlinson, to keep off the rain which was falling at the time he left the coach on his return to the depot, enveloped his head in the cape of his coat, so that he could neither see nor hear the approaching engine, and that in this condition he stepped on the track, and was killed by an engine, which he must have heard or seen had his eyes and ears not been covered in that way. If this contention be true, it is clear that no recovery should be allowed; for, whether Tomlinson should have looked and listened for an approaching engine or not, it was certainly his duty to have exercised ordinary care, and this required that he should not put himself in a condition that he could not be warned of the approaching engine. On the other side, there was evidence to rebut this contention, and to show that Tomlinson did not wrap the cape of his coat about his head, but that he merely held it so as to keep off the rain, but not so as to obstruct his vision or sense of hearing. Now, if Tomlinson went to the cars, not out of mere idle curiosity, but to assist a friend who desired to take passage, and needed assistance to reach and enter the coach, it is evident that he was not a trespasser, and the rules that apply in a case where a trespasser is injured would not be applicable in such a case. An escort of

that kind performs a service in the common interest of the carrier and the passenger. His entry upon the premises of the company is upon an implied invitation of the carrier, which should use at least ordinary care to avoid injury to him while there. *Railway Company* v. *Lawton,* 55 Ark. 433, 18 S. W. 543.

Nor, under such circumstances, can it be said, as a matter of law, that Tomlinson was bound to look and listen for approaching trains before attempting to cross the track between the depot and the cars if this was a time when the coaches from which he was returning were open for the reception of passengers, and when passengers and their escorts were passing to and fro between the cars and the depot. The rule that one should look and listen for approaching trains before attempting to pass a railway track is often applied in cases for injuries to travelers on highways at railway crossings. In such a case, where there is no invitation on the part of the company for the traveler to cross, the courts can say, as a matter of law, that he should look and listen for approaching trains, and, if he fails to do so, and by reason of such failure is injured, he can recover nothing by way of damages; for, even if the company be negligent, his own negligence contributes to his injury. But the case is different where the injured person comes on the track by the invitation of the railway company. In such a case he must still exercise ordinary care, but, as he has the right to rely to some extent upon an implied assurance of the company that the way is safe, the courts, not knowing to what extent his acts may be influenced by the conduct of the company, cannot in such a case say as a matter of law that the mere failure to look and listen is such negligence as precludes a recovery. If, then, a passenger or his escort is injured while attempting to pass an intervening track to reach a depot or train when the circumstances justify him in believing that he is invited by the company to pass over the track, it becomes a question for the jury, after considering all the circumstances, to say whether or not he is guilty of a want of ordinary care. In determining that question the jury should no doubt consider whether he did or did not look and listen, along with the other circumstances in proof; but the mere fact, if proved, that he did not look and listen does not, under such circumstances, conclusively establish negligence, it being for the jury to say whether he should have looked or listened, and whether, under all of the circumstances, he was guilty of negligence or not. *Railway Company* v. *Johnson,* 59 Ark. 122; *Langan* v. *St. Louis, I. M. & S.*

*Ry. Co.* 72 Mo. 392; *Brassell* v. *N. Y. C., etc., R. Co.* 84 N. Y., 241; *Atlantic City R. Co.* v. *Goodwin,* 62 N. J. Law, 394; *B. & O. R. Co.* v. *State,* 60 Md. 449; 1 Fetter, Carr. Pass. § 136.

Now the evidence bearing on the question of whether Tomlinson was guilty of negligence contributing to his injury was conflicting. At least, the evidence of negligence on his part was not so clear and convincing as to justify the court in withdrawing that question from the jury; and, had that question been properly presented to them, we should have felt bound by their decision. But a careful consideration of the instructions given to the jury at request of the plaintiff has convinced us that some of them were erroneous and misleading. These instructions are set out in the statement of facts, and we need not repeat them here in full. The first instruction is rather long, and made so partly for the reason that it commences by submitting to the jury for decision certain undisputed questions of fact. There was certainly no reason why the question as to whether the defendant railroad company on the 8th day of July, 1894, had a passenger depot at Little Rock should have been submitted to a jury for decision; for not only was there no conflict in the evidence on that point, but it is a matter of general information that the Iron Mountain Company has maintained such a depot here for over a quarter of a century. The only effect of submitting such undisputed facts to the jury as if they were disputed is to more or less cloud and obscure the real questions of fact at issue, which the jury are required to determine. *Pacific Mutual Life Ins. Co.* v. *Walker,* 67 Ark. 147.

But, passing this matter, to which we have called attention only because the case must be retried, we will now notice some more serious objections. The instruction tells the jury that, if Tomlinson accompanied to the coaches a departing passenger who needed assistance, or if he visited the coach to look after the comfort of such passenger, when the coaches were open and ready for the reception of passengers, and when passengers were passing back and forth between the platform and the coaches with the apparent acquiescence of the railroad company, then, to quote from the instruction, "Tomlinson was rightfully upon the railway premises under an implied assurance that no engine would be permitted to run on an intervening track unless the railway should use ordinary care and prudence to give timely and ample warning of the approach, and he had a right to lessen his own watchfulness, and it was not incumbent upon him to be on the lookout for dan-

ger, if, under the surrounding circumstances, he had no reasonable ground to suspect that danger was to be apprehended." Now, there was evidence tending to show that Tomlinson made two visits to the coaches,—one to accompany and assist his friend, who intended to leave on the train; and another when he returned apparently without any necessity except his own pleasure, to have another talk with his departing friend. If Tomlinson returned to the coach a second time as a matter purely of his own pleasure, he could hardly be said to be there on an implied invitation of the company. His situation would then be that of a licensee, who must take the license with its risk. The company could, of course, do him no wanton injury, nor could they dispense with the statutory requirements of keeping a lookout, but in such a case it had the right to conduct its business in the usual and lawful way without regard to his comfort or convenience, and to expect of him that he would use due care to keep out of the way of its engines and trains. *Heinlein* v. *Boston & P. R. Co.* 147 Mass. 136.

But let us suppose that Tomlinson was killed either on his return from the first trip to the coach, made by him to assist a passenger, or on his return from a second trip, made to look after the comfort or welfare of the passenger, still we think the instruction is erroneous and misleading, for it states that in that event "it was not incumbent on Tomlinson to be on the lookout for danger, if, under the surrounding circumstances, he had no reasonable ground to suspect that danger was to be apprehended." Undoubtedly, this might be the correct rule under some circumstances. A person on a platform or in the depot or cars of the company by its invitation, express or implied, need not, as a rule, be on the lookout for danger, for such places are intended for the convenience and security of passengers and others who go there on business with the company. But a railway track, where engines and cars may be expected to pass, is a different thing, and of itself is suggestive of danger. While it can not be said as a matter of law that a person crossing the track of a railroad by invitation of the company should under all circumstances look and listen for approaching trains, neither on the other hand can it be said that they should not do so; the question, as before stated, being usually one for the jury to determine. Yet certainly a person in such situation should not lose sight of the fact that he is in a place of danger to a careless person. He should not close his eyes or stop his ears, so that warnings of danger may not reach him; for, although it is the duty of the company by

lookout, by signals and by such other means as ordinary prudence may dictate, to endeavor to protect him, it has the right to assume that he has knowledge of his surroundings, and knows that engines and trains may pass, and that he will use ordinary care himself, and be ready to detect signals of danger and act upon them when given.

This case, we should remember, is not exactly similar to a case where a train has stopped at a depot to remain only a minute or two, and where passengers discharged from the train are going to the depot, and others wishing to board the train are passing from the depot to the train.   In such a case a passenger desiring to board the train has no time to lose, and must promptly get aboard the train, or he may be left.   The instruction we are now considering would be more appropriate in such a case than in this, for then the passenger would have more reason to assume that during a minute or two, while the train stopped to discharge and take on passengers, the company would not permit another engine or train to pass over an intervening track between the depot and train, and thus endanger passengers coming or going to the train.   Whether such an instruction would be proper in a case of that kind, we need not say.   But in this case, as before stated, the coaches from which Tomlinson was returning were not attached to a train.   The train to which they were to be attached had not yet arrived, and it was yet some half hour before the time of its departure.   There was, therefore, no occasion for hurry, either in boarding or leaving these coaches.   There was no reason for persons coming to and from the coaches to assume that traffic on the main line would be suspended until the departure of the train, and more reason why they should exercise care in crossing than there would be in the case of a train stopping for a moment only to discharge passengers.   Considering the circumstances in proof, the instruction complained of does not, in our opinion, fairly submit to the jury the question as to whether Tomlinson was guilty of contributory negligence, but tells them, as a matter of law, that it was not incumbent upon him "to be on the lookout for danger if he had no reasonable ground to believe that danger was to be apprehended."   We have said that this may be good law, but it has no application to this case; for, as before stated, Tomlinson, at the time he was struck, was walking across the main track of a railroad at the depot of a city, where trains and engines pass at all hours of the day, and where the circumstances were suggestive of danger.   Yet under this instruction the jury were left free to say that he had no reason to apprehend danger, and

therefore was not guilty of negligence, though he exercised no care whatever. Under this instruction the jury may have concluded that he had no reason to apprehend danger, and therefore was justified in pulling his cape over his ears and eyes, and in attempting to cross the track in that condition. As there was evidence tending to show that Tomlinson did attempt to cross with his eyes and ears covered in that way, we have concluded that the instruction was, for the reasons above stated, erroneous and prejudicial to appellant. It assumes that the evidence was such that the jury might possibly conclude that Tomlinson had no reason to apprehend danger, while, as before stated, the fact that he was crossing the main line of the road at a place where engines and trains often passed conclusively shows that there was danger to one proceeding without care. In the latter clause of this instruction the presiding judge no doubt intended to convey the idea that it was the duty of Tomlinson to have exercised ordinary care himself, but the language used might, to a careless person, convey the idea that the judge was assuming that Tomlinson did in fact exercise such care. But, waiving this defect of form, and granting that the instruction had the meaning intended, it was of no avail, for the preceding portion of the instruction had laid down the rule that it was not incumbent on Tomlinson to be on the lookout for danger if he had no reason to suspect danger; leaving the jury, as before stated, at liberty to conclude that he had no reason to suspect danger, though he was crossing the main track of a great railroad line.

Again, in the sixth instruction given at the request of the plaintiff the judge told the jury that if Tomlinson, in attempting to protect himself from the rain, at the time he left the coach, did only what a man of ordinary prudence would have done under similar circumstances, he was not guilty of negligence. Now, while this may be abstractly correct, yet, under the facts as shown here, it was too broad, and left more to the jury than was necessary or proper. There can only be two views, under the evidence, as to what Tomlinson did to protect himself from the rain. Some of the witnesses stated that he only raised his cape above his head, not obstructing his vision or hearing; others stated that he pulled his cape over his head, covering his eyes and ears, so that he could see directly in front only, and plunged, in this condition, on the track, just before the tender of the backing engine. If this view was true, the finding should have been for the defendant, for there could be no difference of opinion between reasonable men concerning the

recklessness of such conduct. But the instruction given leaves the jury free to find that this was true, and yet find for plaintiff, if they found that a man of ordinary prudence would have thus acted under similar circumstances. This was improper. Whether or not Tomlinson did cover his eyes and ears in that way while attempting to cross the railway track at the time of his injury was a disputed question of fact for the jury to determine; but, that question being once determined in the affirmative, it was for the judge to say that such conduct constituted negligence, for that would follow as a matter of law.

This is an interesting and important case. While the evidence is voluminous and conflicting, the disputed facts are few, and should be clearly submitted to the jury, or their decision will be little better than guesswork. We have given careful attention to the able argument of counsel. The result is that, while we can agree with nearly all the conclusions of law urged by learned counsel for appellee, we cannot agree that the law was well stated, or the facts fairly submitted by the instructions; and for this error the judgment is reversed, and a new trial ordered.