BARRY *v.* KANSAS CITY, FORT SCOTT & MEMPHIS RAILROAD

COMPANY.

Opinion delivered January 6, 1906.

RAILROAD—KILLING BY TRAIN—CONTRIBUTORY NEGLIGENCE.—To hold a railroad company liable for the killing of a person by the running of a train, where intestate was guilty of contributory negligence, it must appear, not merely that the trainmen might, by the use of ordinary care, have discovered intestate's peril, but that they actually observed his peril in time to avoid the injury.

Appeal from Crittenden Circuit Court; ALLEN HUGHES, Judge; affirmed.

STATEMENT BY THE COURT.

This action by Lizzie Barry, as administratrix of the estate of her deceased son, George Allen Langdon, deceased, sought to recover the sum of $15,000 for the benefit of such estate, and the further sum of $25,000 as compensatory damages for the benefit of herself as next of kin, because of the wrongful killing of deceased through the negligence of defendants, the Kansas City, Fort Scott & Memphis Railroad Company and the St. Louis & San Francisco Railroad Company.

The undisputed facts in this case are: That the deceased boarded a passenger train of the appellant at Deckerville, without money or ticket; that he declined to pay fare, and was ejected at Gilmore, which was a regular station, with a depot house and a ticket agent; that he then went around the train upon the opposite side, and by stealth climbed upon the platform of the baggage car at the front end, where he was riding with two men when seen by the front brakeman. He rode in this position until the train stopped at Big Creek for the purpose of allowing other passengers to board and leave the train. The hour was 6 p. m.; the day the 12th of November; the weather was not inclement. There was at Big Creek a clubhouse, 200 yards from the station, with a walk leading thereto, and within 100 yards of the track, and six or eight houses occupied by various people. One of his companions on the platform was a white man, and the other a colored man, and the white man, on being ejected, went to the clubhouse for the purpose of obtaining something to eat.

The deceased was held by the brakeman, Smith, who was called by the plaintiff, until the train passed, to prevent him from getting on again. He was left standing in a safe place. He conversed with the plaintiff's witness, Aaron Jones, who said that he asked how far it was to Deckerville, and he told him that he had passed Deckerville, and that Deckerville was six miles back, whereupon deceased said he knew his business, and started down the track following the train toward Memphis, carrying his grip.

According to the testimony of all of the witnesses, he stood up while in the passenger car, riding from Deckerville to Gilmore. He was able to run and catch the train at Gilmore. He had a bottle in his pocket and offered both the brakemen whisky, the

inference being that this was for the purpose of inducing them to allow him to ride.

The brakeman, Smith, testified that he considered him safer on the ground than upon the platform. . There was a depot house, either completely or partly finished, at Big Creek, and there appears to be no reason why he could not as well have obtained entertainment at the clubhouse, or at some of the houses in the vicinity, as he could at any other place upon the line of the road. Clarkton, the next station east, had a depot house, where a ticket agent sold tickets, and one residence in the vicinity.

Immediately back of the clubhouse there was a public road, in which he could have traveled, if he desired to do so. This road went parallel with the track. There was also a path by the side of the track, in which he could have walked with safety. While there was testimony tending to show that appellant was intoxicated, yet he had sufficient control of his movements to cross a trestle over a stream of water thirty feet high and 150 feet long; he had sufficient intelligence to know that he wished to go to Memphis without paying his fare, and he had both sufficient intelligence and control of his movements to board the train a second time while it was in motion, and to take his position upon the platform of the baggage car, to which no door led where he would be the least likely to be observed.

*Francis J. Bryne,* for appellant.

At the conclusion of the evidence the court directed the jury to find for the defendant, which was done, and judgment was entered accordingly. Plaintiff has appealed.

The court erred in sustaining defendant's motion for peremptory instruction. By such motion defendant admitted plaintiff's evidence and the reasonable inferences to be drawn therefrom. 6 Enc. Pl. & Pr. 693, 695; 42 C. C. A. 20, 23; 134 U. S. 614. The cause should be remanded for assessment of damages only. Authorities *supra,* and 14 Ark. 706; 96 Tenn. 408; 26 W. Va. 445; 6 Enc. Pl. & Pr. 445; 37 Tex. 453; 4 Ark. 110; 123 U. S. 727; 53 Fed. 222. Plaintiff should have been given an opportunity to take a nonsuit, before directing a verdict for defendant. 57 Ark. 461; 6 Enc. Pl. & Pr. 699.

2. The time, place and circumstances of the ejectment of

deceased was negligence on the part of defendant, against which the defense of contributory negligence cannot be pleaded. 69 Ark. 380, and cases cited; 7 Am. & Eng. Enc. Law (2 Ed.), 443. The injury was *prima facie* evidence of negligence of the company. Sand. & H. Dig. § 6349; 65 Ark. 235; 69 Ark. 380. He was not a trespasser on the track of defendant of his own fault. 155 Pa. 548; 20 L. R. A. 682; 6 L. R. A. 241, 244. The negligence that bars a recovery must be such as proximately contributes to the injury received. 62 Ark. 164. Deceased could not lawfully be ejected except at a usual stopping-place. 45 Ark. 523; 65 Ark. 225; 66 Ark. 602.

3. The company owed the duty of greater care toward deceased by reason of his condition than if he had been in full possession of his faculties. 50 Am. Rep. 186; 30 S. W. 979; 40 Mo. 15; 19 So. 51; 37 Hun (N. Y.), 107; 30 Hun, 399; 42 L. R. A. 664.

*C. H. Trimble*, for appellee.

The company is not liable for ejecting a drunken trespasser who is subsequently injured by another train, unless it appear that he was so much under the influence of liquor as to be incapable of exercising his faculties, and that the persons ejecting him knew his mental condition at the time, or under the circumstances ought to have known it. 19 L. R. A. 327; 125 Fed. 897; 9 So. 269; 94 Ind. 276; 9 Ky. Law Rep. 893; 65 S. W. 169; 90 N. W. 660; 80 S. W. 802; 44 S. W. 648. Under the proof deceased was in possession of his faculties, and was guilty of such contributory negligence as bars recovery. 69 Ark. 380; 65 Ark. 429.

WOOD, J., (after stating the facts.) The uncontradicted proof shows that appellant's intestate was guilty of contributory negligence, which, under many decisions of this court, bars recovery, unless it appears that appellees could by ordinary prudence have avoided the injury after discovering his perilous situation. There is no proof that appellee had discovered the dangerous position of the deceased. The most that could be said of the proof on this point is that appellee by the use of ordinary care might have observed the peril of the deceased in time to have avoided the injury. But this under our decisions will not make the company liable where the deceased was also guilty of negli-

gence contributing to the injury. *Johnson* v. *Stewart*, 62 Ark. 164; *St. Louis, I. M. & S. Ry. Co.* v. *Leathers*, 62 Ark. 235; *St. Louis S. W. Ry. Co.* v. *Dingman*, 62 Ark. 245; *St. Louis, I. M. & S. Ry. Co.* v. *Taylor*, 64 Ark. 367; *Hot Springs Street Ry. Co.* v. *Johnson*, 64 Ark. 420; *St. Louis & S. F. Ry. Co.* v. *Townsend*, 69 Ark. 380; *St. Louis, I. M. & S. Ry. Co.* v. *Evans*, 74 Ark. 407; *Little Rock Traction & Electric Co.* v. *Kimbro*, 75 Ark. 211; *St. Louis S. W. Ry. Co.* v. *Cochran, ante*, p. 398.

Affirm.