## ARKANSAS & LOUISIANA RAILWAY COMPANY *v.* SAIN.

### Opinion delivered May 3, 1909.

1.  RAILROADS—LIABILITY TO TRESPASSER.—Before a railroad company will be held liable to a trespasser on its train, the burden is on the latter to show, not only that he was in a perilous situation, but also that such situation was discovered by the company's employees in time to avoid injuring him, and that they failed after that to exercise ordinary care to do so. (Page 283.)

2.  DAMAGES—ABSTRACT INSTRUCTION.—Where, in an action by an infant to recover for personal injuries, there was no evidence of any probable loss of earnings after the plaintiff reached his majority, it was error to instruct the jury to take into consideration his probable loss of earnings after he reached his majority. (Page 284.)

3.  CARRIERS—IMPLIED INVITATION TO ENTER CAR.—One who goes upon cars at a railway station for the purpose of meeting and assisting the incoming or outgoing passengers in such friendly offices as may be reasonably necessary for their convenience, comfort and safety is upon the railway premises by implied invitation, and is not a trespasser. (Page 285.)

4.  SAME—LICENSE TO ENTER CAR.—One who goes upon railway cars out of mere curiosity or for the purpose simply of meeting and greeting friends or seeing strangers, but with no idea or purpose of rendering any assistance to incoming or outgoing passengers, is not there by invitation, and is no more than a bare licensee, to whom the railway company owes no duty save not to injure him after discovering his peril. (Page 285.)

5.  SAME—CUSTOM TO PERMIT LICENSEE TO ENTER CARS.—A custom upon the part of a railway company, however long continued, to permit persons to go upon its cars merely for the purpose of meeting or seeing incoming passengers, but not for the purpose of rendering them any assistance, does not constitute such persons anything more than naked licenses. (Page 286.)

6.  SAME—INJURY TO LICENSEE—INFANCY.—Where a trespasser or naked licensee is injured by the movement of a railroad train, the fact that he was an infant is not material, since the railroad company would not be liable unless it discovered his peril in time to have avoided injuring him. (Page 286.)

Appeal from Howard Circuit Court; *James S. Steel*, Judge; reversed.

### STATEMENT BY THE COURT.

This is an action for personal injuries. The complaint alleges that the plaintiff is a minor ten years of age, and that the defendant is an Arkansas corporation. That on June 16, 1908, the plaintiff, with his older brother, had gone to the depot of the defendant company at Nashville, Ark., to meet some friends who were expected to arrive on the noon train of defendant. That when the train had arrived and stopped for the purpose of permitting the passengers thereon to alight, the plaintiff stepped on to the platform of the rear car to ascertain if the parties for whom he and his brother were looking were passengers on said train. That while standing on the platform of said rear car, and while the passengers on said car were alighting, said car was negligently and violently thrown back some eight or ten feet, with such force as to throw the said Robert Jett Sain forward; and that he was so thrown forward and his great toe was caught between the bumpers of the car on which he was standing and the car immediately in front thereof, and by the force of the contact his said toe was greatly lacerated and cut off, from the effects of which he suffered great pain and the loss of his great toe, to his damage in the sum of one thousand dollars, for which he prayed judgment.

The appellant answered, and admitted that the plaintiff was a minor, but averred that it had no knowledge or information of his age, and therefore did not admit that he was only ten years of age. The answer denied further all the material allegations of the complaint; alleged that it was immaterial that the train was standing at the depot for the purpose of permitting passengers thereon to alight, and that it was immaterial that the accident occurred while passengers were alighting therefrom. The answer set up contributory negligence of the plaintiff, and that he was a mere trespasser or meddler, as affirmative defenses.

The evidence developed the following facts: Robert Jett Sain, a youth about eleven years of age, went to appellant's depot in the town of Nashville to meet some delegates that were expected to arrive on the train. He had not been sent there for the

purpose of meeting the delegates. The train had been stopped two or three minutes. He got upon the platform, between the coaches for the white and colored people. He was in three or four feet of the brakeman, who was there when he got upon the platform of the coach. The train backed suddenly and then stopped, and that threw him forward upon the white people's coach, and his great toe was caught between the bumpers of the two cars. The delegates, who were taking part in a school contest, were not in his class, but they were older than he. He went to see whoever came. He could have seen them get off without going on the train. He did not know that the train bumped up when it moved backward or forward; did not know how the train worked. He was barefooted. Didn't know how it was that his toe was caught without his whole foot being caught.

It was shown that the toe was badly mashed, and the tip of the bone pinched off. The doctor attended him ten or twelve days, and the boy suffered greatly. There was a scar that would probably be permanent. With that exception, the physician did not "see that it would trouble him after he reached his majority." It was shown that the train had come to a stop for three or four seconds; some of the passengers had got off, and others were trying to get off when the train backed the first time. There was a violent backing, the train started back very suddenly and stopped. They backed three times or more before making a successful coupling, while the passengers were attempting to get off.

The youth testified, over appellant's objection, that he had gone to the train often before to meet people, that he did so whenever he wanted to meet anybody; that he had gone there a number of times to meet his father and brother, and had always gone on the train to meet them, and he did not think that any of the employees ever objected to his doing so. It was shown by the father of the injured lad, over the objection of appellant, that it had been the habit of his children to always meet him at the depot when he came home, for ten or fifteen years. "They all come," says he, "and get on the platform to meet me, my two little boys and youngest girl have made it a habit to get up on the train. I have noticed other people, but my children especially; never heard a word of objection from any of the employees."

It was shown on behalf of appellant that its employees were

doing on this occasion as they usually do when they have box cars in the train. The slack was taken up in the train so that the pin was tight, and the head brakeman "gave the engineer the slack signal, and he gave a little slack." The brakeman gave an easy slack signal, and the engineer came back as easy as he could to pull the pin. The brakeman did not see the plaintiff when the signal was given, did not know that he was there. It was customary to cut the cars off in the way they were doing that day. The brakeman knew that passengers were getting off the train at the time the accident occurred; he was assisting them off. "The back action was not very quick; just a gradual moving back." The witness testified: "It is not a fact that people who are meeting relations go there every day and get on that train, and I never open my mouth about it. They don't get on that train when I see them. We tell people not to get on the train who have no business there." There was a sign at the depot reading, 'No trespassers allowed.' It is a warning for trespassers to keep away. The witness did not remember when he last saw it, and would not say that it was there at the time of the trial. If it had been moved, witness did not know it. There is a sign on the passenger coach door which reads: "Passengers are not allowed to ride on the platform." The platform is for persons to get on and off the train. It is not there for persons to stand on the platform. There is no danger on the platform when the train is standing still.

The court, over the objection of appellant, gave, among others, the following prayers for instructions at the instance of appellee:

"6. Although the jury may believe from the evidence that the plaintiff had gone upon defendant's car without right, yet if you believe his presence there was known to the employees of the defendant, then the defendant would be bound to use ordinary care not to hurt him."

"7. If you find for the plaintiff, you may assess his damages at whatever sum you believe the evidence shows that he has sustained; and in arriving at this you may take into consideration his probable loss of earnings after he reaches his majority caused by the injury, if you find there is any probable loss, and the increased expenses he will probably incur on account of the injury after

that time, if any, and damages for his past, present and future pain, if any, caused from said injury, and for his personal disfigurement, if any."

Other instructions were given at the instance of appellee, and also the appellant, but it is unnecessary to set them out here. The jury returned a verdict for $250 in favor of plaintiff. Judgment was rendered for that amount, and this appeal has been duly prosecuted.

*E. B. Kinsworthy, Lewis Rhoton,* and *W. C. Rodgers,* for appellant.

The failure of a railroad company to keep a lookout to prevent boys from swinging on the ladders of its moving trains is not negligence. 57 Ark. 461. The only duty the company owes such a trespasser is not to injure him wantonly. 75 Ark. 461. Instructions should be applicable to the facts. 14 Ark. 530; 37 Ark. 580; 54 Ark. 336; 77 Ark. 109; 84 Ark. 373. Conjectures cannot take the place of reasonable evidence. 29 Ark. 448. There can be no recovery for loss of earnings during infancy. 65 Ark. 619. Appellant owed appellee no duty except not to recklessly injure him after his peril was discovered. 45 Ark. 246; 83 Ark. 300; 86 Ark. 306; 114 Ill. 79. And it owed him no duty to discover him. 45 Ark. 246; 57 Ark. 461; 86 Ark. 306. The burden was on appellee to show that appellant discovered his perilous situation. 83 Ark. 300; 86 Ark. 306. A naked license to pass over premises will not create a duty on the part of the owner to provide against danger or accident. 92 S. W. 874; 108 N. Y. 205; 93 Ky. 408; 64 N. H. 220; 154 Mass. 349; 49 S. C. 12; 136 Ind. 366; 91 Tenn. 428; 154 Ind. 49; 114 Ill. 79; 99 Va. 156. And infancy does not change the status of a trespasser or licensee. 93 Ky. 408; 95 Ky. 314; 64 N. H. 220; 154 Mass. 349; 150 Mass. 515; 109 Ind. 179; 13 S. W. 275; 6 Tex. Civ. App. 702. One cannot, by his concurring fault, bring on an injury and then recover therefor. 36 Ark. 371; 48 Ark. 106; 76 Ark. 256; 81 Ark. 1. There is no presumption of negligence from the accident itself. 179 U. S. 658; 70 Ark. 437; 82 Ark. 372; 79 Ark. 76. It was error to admit evidence of custom to allow people to get upon a train to meet passengers. 45 Ark. 246; 99 Ky. 332; 126 Mo. 372; 49 S. C. 12; 99 Va. 156.

*Will P. Feazel, Sain & Sain,* and *T. D. Crawford,* for appellee.

The custom of permitting people to go upon trains to meet incoming passengers has grown to be an incident to the railroad business. 55 Ark. 432. And it is the company's duty to keep a lookout for persons in places of danger when about to move its train after the passengers begin to alight. 58 S. C. 70; 53 L. R. A. 913; 30 L. R. A. 257. Railroads are responsible for all damages to persons or property caused by the running of trains in this State. Kirby's Dig. § 6329; 33 Ark. 816. The only exception is as to trainmen who are injured while running a train. 74 Ark. 22; 82 Ark. 375. Other railroad employees not engaged in the operation of trains are entitled to the benefit of this presumption. 81 Ark. 275.; 83 Ark. 61. And it runs to all persons not engaged in railway service when the injury occurs. 63 Ark. 636.

WOOD, J., (after stating the facts). Instruction number six was erroneous. Appellee testified that the train "had been stopped two or three minutes" when he got upon the platform; and the testimony on behalf of the appellant showed that there was "no danger on the platform when the train is standing still." Appellee testified that he "was in three or four feet of Faust Mulkey, the brakeman, when he got upon the platform of the coach;" but he does not say that this brakeman was looking at him, or that the brakeman saw him on the platform. Brakeman Mulkey, on the contrary, testified that he did not see him on the platform before he was hurt. The above testimony was hardly sufficient to warrant the court in submitting to the jury the question as to whether or not appellee's presence on the platform was known to the employees of the appellant. The instruction tells the jury that, although appellee may have been a trespasser, yet, if his presence was known to the employees of appellant, the latter would be bound to use ordinary care not to hurt him. This is not the law. If the appellee was a trespasser, the burden was upon him to show, not only that he was in a perilous situation, but that such situation was discovered by the employees of appellant, and that they failed after that to exercise ordinary care to avoid injuring him. It is not enough that his peril might have been discovered by the exercise of ordinary

care; he must show that they actually discovered his peril in time to have avoided the injury. *St. Louis, I. M. & S. Ry. Co.* v. *Freeman,* 36 Ark. 41; *St. Louis & S. F. Rd. Co.* v. *Townsend,* 69 Ark. 380; *Burns* v. *St. Louis S. W. Ry. Co.,* 76 Ark. 10; *Barry* v. *K. C., Ft. S. & M. Rd. Co.,* 77 Ark. 401. See also *St. Louis, I. M. & S. Ry. Co.* v. *Taylor,* 64 Ark. 364; *St. Louis, I. M. & S. Ry. Co.* v. *Raines,* 86 Ark. 306.

· "A railroad company owes trespassers no contract duty." The general rule is that it owes them no positive duty or care, and only the duty not to wilfully or wantonly injure them, or the duty to exercise ordinary care not to injure them after discovering their danger and inability to escape. 3 Elliott on Railroads, § § 1254, 1255. See 2 Hutchinson on Carriers, § 990 and note; *Chicago, B. & Q. R. Co.* v. *Mehlsack,* 131 Ill. 61; *St. Louis, I. M. & S. Ry. Co.* v. *Ledbetter,* 45 Ark. 246; *Adams* v. *St. Louis, I. M. & S. Ry. Co.,* 83 Ark. 300; *Little Rock & M. R. Co.* v. *Russell,* 88 Ark. 172; *Catlett* v. *Ry. Co.,* 57 Ark. 461.

There was no evidence that appellee was in a perilous situation when he went upon the platform, and no evidence that the employees of defendant knew that he was in a place of peril, even if such fact existed. The testimony is to the contrary. There was evidence that tended to show that appellee went upon the platform of appellant's car without right. The instruction was therefore not only erroneous for the reasons stated, but was prejudicial.

Instruction number seven was abstract in some particulars. There was no evidence of any probable loss of earnings after appellee reached his majority on account of the injury. There was nothing left of the injury, according to the evidence, except a scar; and it is not shown that the scar would diminish appellee's earning power after he reached his majority, nor that he would incur any additional expense on account of the injury after that time. Nor, indeed, is it shown that there would be any future pain after the wound had healed. It might become sensitive, but the doctor "couldn't tell about that." The instruction on the measure of damages was therefore erroneous. Under it the jury could roam in a realm of speculation; but for these improper elements, which the jury were told they could consider,

their verdict may have been for a less sum.  Who can tell? The instruction was therefore prejudicial.

A discussion of the law applicable to the facts will indicate what the rulings of the court should have been upon other prayers for instructions.  We shall therefore discuss the law applicable to the facts, and such rulings as we deem material on the admissibility of evidence.

One who goes upon cars at a railway station for the purpose of meeting and assisting the incoming or outgoing passengers in such "friendly offices as may be reasonably necessary for their convenience, comfort and safety" is upon the premises of the railway company by its implied invitation, and is therefore not a trespasser.  *St. Louis, I. M. & S. Ry Co.* v. *Grimsley, ante* p. 64; *Ry. Co.* v. *Lawton*, 55 Ark. 428; *St. Louis, I. M. & S. Ry Co.* v. *Tomlinson*, 69 Ark. 489.  To such an one the railway company undoubtedly owed the duty of exercising reasonable care.  3 Elliott on Railroads, § 1256; 2 Hutchinson on Carriers, § 991 (553a).

But one who goes upon the premises of a railway company, or upon its cars, out of mere curiosity or for the pleasure of simply meeting and greeting friends or relatives or of seeing strangers, but with no idea or purpose of rendering any assistance to incoming or outgoing passengers, is not there upon any invitation of the company, for such an one can not be said to be directly or remotely upon any mission, or engaged in any business, connected with the interests of the company.  *Railway Co.* v. *Lawton*, 55 Ark. 428; *St. Louis, I. M. & S. Ry. Co.* v. *Tomlinson*, 69 Ark. 489.

If the company permits persons to go upon its premises or its cars for the purpose last above indicated, such persons are not trespassers, but licensees.  They are not, however, upon the company's platform or car "to welcome the coming or speed the parting guest," in the sense of the law, and are therefore nothing more nor less than bare licensees.  To bare licensees railroad companies owe no affirmative duty of care; for such licensees take their license with its concomitant perils.  *Cusick* v. *Adams*, 115 N. Y. 55; *Carr* v. *Mo. Pac. Ry. Co.*, 92 S. W. 874; *St. Louis, I. M. & S. Ry. Co.* v. *Tomlinson*, 69 Ark. 489; *Western Ry. Co.* v. *Wood*, 99 Va. 156.

A custom upon the part of a railway company, however long continued, to permit people to go upon its cars merely for the purpose of meeting or seeing incoming passengers, but not for the purpose of rendering them any assistance, does not constitute those who go upon the cars in pursuance of such custom anything more than naked licensees. They are not licensees upon invitation, but simply by passive permission. An invitation upon the part of the company is implied where one goes upon its cars to render some needed assistance to passengers, for the reason that such service to the passengers is considered to be in the interest of the company as well. *Railway Company* v. *Lawton,* 55 Ark. 428.

Now, there is no evidence that young Sain went upon the platform for the purpose of meeting or assisting the incoming passengers. He says he went down to meet the delegates to the school exhibition, but he had not been sent there for any purpose; he went "to see whoever came." The delegates who were taking part in the school contests were older and larger than he; they were not in his class. His older brother, a grown young man, was one of the committee to meet the delegates, and went to the depot for that purpose. The going of appellee to the depot merely for the purpose of meeting the delegates did not show that the appellant owed him any duty of care, for his meeting of the delegates may have been prompted by idle curiosity or some purely selfish motive that was of no concern to appellant. The burden was upon appellee, and he fails to show that he was upon appellant's car by any invitation, express or implied. On the contrary, the evidence, viewed in its strongest light for appellee, makes him at most only a naked licensee. The court therefore erred in sending the cause to the jury upon instructions that would warrant them in finding that appellee was upon the platform of appellant's car by implied invitation, and that, if so, appellant owed him the duty to exercise ordinary care to avoid injuring him.

If appellee was a trespasser or mere licensee, then the question of his age was wholly immaterial, for in such case, as we have seen, appellant would not be liable unless it had discovered that appellee was in a position of peril from which he could not extricate himself and then failed to exercise ordinary care to

avoid injuring him. *McEachern* v. *Boston & M. Rd. Co.,* 150 Mass. 515; *Vertrees* v. *Newport News, &c., Co.,* 95 Ky. 314; *Mc-Dermott* v. *Ky. Cent. Rd. Co.,* 93 Ky. 408; *Frost* v. *Eastern Railroad,* 64 N. H. 220.

There was no showing in this case of appellant having held out any inducements or allurements to have appellee go upon its cars. See *Cusick* v. *Adams,* 115 N. Y. 55, *supra.*

For the errors in the court's rulings the judgment is therefore reversed, and the cause remanded for new trial.