CLEVELAND v. PINE BLUFF, ARKANSAS RIVER RAILWAY COMPANY.

Opinion delivered February 17, 1913.

1. RAILROADS—VIOLATION OF RULE—NOTICE.—A railroad company will not be liable in damages to a woman injured by a collision, while riding on a hand-car at the invitation of the section foreman, in violation of the rules of the company, when it is not shown that the officials of the company who had control over use of the

hand-car had any knowledge that the hand-car was used on this or other occasions for carrying employees and their friends up and down the line. (Page 97.)

2. RAILROADS—DUTY TO—LICENSEE.—A railroad company owes to a mere licensee upon its track only a duty to use reasonable care not to injure him after discovering his presence. (Page 99.)

Appeal from Jefferson Circuit Court; *Antonio B. Grace,* Judge; affirmed.

### STATEMENT BY THE COURT.

Appellant instituted this suit against appellee to recover damages for injuries received by her while riding upon one of appellee's hand-cars on its line of railroad. The facts shown by the appellant and her witnesses are substantially as follows:

Appellant was a midwife and had been nursing the wife of A. S. Desha, a section foreman on appellee's line of railroad. On the day she was injured she was at Mr. Desha's house and deciding to return home, Mr. Desha had the section hands to bring out the hand-car and take her home on it. She started home on the hand-car with the section hands a short time after dark. On the way home a motor car, which was being run on appellee's line of railroad, ran into the hand-car and severely injured appellant. Several witnesses testified that it was the custom of people living in the neighborhood to ride upon the hand-car and that this custom had been in existence for over eight years. They said after work hours the people in the neighborhood would ride on the hand-cars in going to lodges, to festivals and to other places for their own pleasure and business. Another witness stated that this custom prevailed to the extent that the hand-car was used for this purpose during any hour of the day or night. Most of the testimony, however, was to the effect that it was so used after work hours. Another witness testified that on a few occasions he had hired the hand-car to go to places upon his own business.

The testimony for appellee is substantially as follows: Appellee had owned and controlled the railroad in question for about five years. The road was a branch

road of the St. Louis Southwestern Railway Company, and was some fifteen miles long. The hand-cars were for the use of the section foremen and their crews. The railroad company had a rule for the operation of the hand-cars by section foremen and this rule was in force at the time appellant was injured. This rule provides that the hand-cars must be pushed with care and must not be used except in service of the company without special authority from the roadmaster or assistant road-master, and no one is allowed to ride upon the hand-car except employees in the performance of duty, unless authorized by written order, and section foremen are to keep the hand-cars locked or so secured that they can not be moved. Not to be used on Sunday except for inspection of track and in case of necessity. When obliged to run hand-cars after dark a red light must be displayed. It was also against the rules to permit a hand-car to be sent out after working hours except on the business of the company. The superintendent and his assistant, the roadmaster and his assistant, all testified that they had never authorized any section foreman to use a hand-car at night or after work hours and that they did not know of them having been so used. The roadmaster testified that he was accustomed to go over the road in question and spent one night on it about once a month. That during these trips he had never heard the hand-cars running at night and did not see them being used contrary to the rules of the company.

A. S. Desha, the section foreman, testified: I was familiar with the rules concerning the use of hand-cars and knew that I had no authority to use the hand-car or to permit it to go out on the track after working hours. Such use would be a violation of the rules unless it was for the company's business. The working hours are from seven to six. I sent her (appellant) home on the night in question on the hand-car just for courtesy and to accommodate her. I had no authority from any of the officers over me to take the car out that night.

The testimony of appellant shows that the station

agent knew that the people in the neighborhood were accustomed to ride on the hand-cars after working hours, and the testimony on the part of appellee showed that the station agent had no control over the use of the hand-cars.    Other evidence will be referred to in the opinion.

The jury returned a verdict for appellee and to reverse the judgment rendered appellant prosecutes this appeal.

*A. H. Rowell,* for appellant.

*S. H. West* and *Bridges & Wooldridge,* for appellee.

Hart, J., (after stating the facts).    The instructions of the court took away from the jury every question of fact except that based upon the doctrine of discovered peril, and this action of the court is assigned as error by counsel for appellant.    The undisputed evidence shows that the railroad company did not operate its hand-cars for the carriage of passengers and that the rules of the company forbade their use for that purpose.    It is conceded by counsel for appellant that a person, taking a ride on the hand-car with the foreman's assent merely, could not be regarded as a passenger and that under such circumstances the presumption would be that he was not legally a passenger.    Counsel insists however that such presumption may be rebutted by showing such a general and continuous custom of the section foreman in allowing persons to ride upon the hand-car as would be notice to the railroad company.    In other words, counsel for appellant concedes that the section foreman had no power whatever as to the transportation of passengers and that the rules of the company forbade him to carry them on the hand-car but he claims that under the particular facts of this case the rule was abrogated by the general custom of the people in the neighborhood riding upon the cars by the permission of the section foreman, and that the railroad company had constructive knowledge of that fact, and that under the facts proved by appellant, the appellee was liable for the injuries sustained by her.    We can not agree with him in his contention.    Appellee had been in possession and control of the road for a period

of five years, and only evidence of what had been done while it had control of the road is competent in this case. The evidence shows that during the time appellee had operated the road its section foremen, as an accommodation, had been accustomed to invite and to allow people living in the neighborhood to ride with them on the hand-cars and had often used such cars to take their families and neighbors up and down the track on business and for pleasure. This was done without the authority of the railroad company and was against its rules. There is no evidence to show that it ever came to the attention of the company's officers who had control over such matters, and the physical evidence of such use was not sufficient to impart knowledge thereof to the railroad company. It is true one witness testified that he had on two or three occasions hired the section foreman to carry him up and down the road on business but it is not shown that any of the officers having charge of the operation of the railroad knew of this fact. The other testimony on the subject only goes to the extent of showing that people living in the neighborhood were accustomed to ride up and down on the railroad with the section foreman for business or pleasure and that this was done principally after work hours. The roadmaster was accustomed to spend one night during the month on this branch line of railroad, but he says he did not know of this custom and did not hear the hand-car running up and down the road during the time he was there.

Therefore, we do not think that the testimony is sufficient to show that the railroad company had consented to the use of its hand-cars for the carriage of passengers and that its officers in charge of the operation of the road had knowledge of the fact that its hand-cars were used for such purposes. *Rathbone* v. *Oregon Railway Co.*, 66 Pac. 909; Hutchinson on Carriers, Vol. 2, Sec. 1000; *Ib.*, Vol. 3, Sec. 1205.

The case of *St. L., I. M. & S. Ry. Co.* v. *Caraway*, 77 Ark. 405, and other like cases, are relied upon by counsel for appellant to sustain his position. We do not think

the doctrine there announced has any application to the facts of the present case. The court was discussing the liability of the master to his servant. The rule is well settled that if the master directs an appliance to be used for some purpose other than that for which it was originally intended, he puts it in the same position as if he had originally furnished it for that purpose. But the fact that it has been diverted to a new use will not render the master liable if that diversion occurred without his knowledge or consent. A qualification to this rule is admitted in cases where it appears customary for employees to put the appliance to a new use and the master knows of this custom. See 1 Labatt on Master & Servant, section 28. So the rule has become settled that when the master permits a custom to become established by which an appliance is put to a secondary use he is equally liable as in the case of a primary one. Besides in the case of the *Arkansas & Louisiana Railway Company* v. *Sain,* 90 Ark. 278, the court said:

"If the company permits persons to go upon its premises or its cars for the purpose last above indicated, such persons are not trespassers, but licensees. They are not, however, upon the company's platform or car 'to welcome the coming or speed the parting guest,' in the sense of the law, and are therefore nothing more nor less than bare licensees. To bare licensees railroad companies owe no affirmative duty of care; for such licensees take their license with its concomitant perils. (Citing cases.) A custom upon the part of a railway company, however long continued, to permit people to go upon its cars merely for the purpose of meeting or seeing incoming passengers, but not for the purpose of rendering them any assistance, does not constitute those who go upon the cars in pursuance of such custom anything more than naked licensees. They are not licensees upon invitation, but simply by passive permission. An invitation upon the part of the company is implied where one goes upon its cars to render some needed assistance to passengers, for the reason that such service to the passenger is

considered to be in the interest of the company as well. *Railway Company* v. *Lawton,* 55 Ark. 428."

Therefore, the only duty that appellee owed appellant under the circumstances of this case was to exercise reasonable care not to injure her after her presence on the track was discovered. We have not deemed it necessary to abstract the evidence on this point. It is sufficient to say that it was conflicting and the question was properly submitted to the jury under the instructions of the court and a verdict was rendered in favor of appellee. We find no reversible error in the record, and the judgment will be affirmed.