HAYS *v*. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY.

Opinion delivered February 5, 1912.

RAILROADS—TRESPASSER ON TRACK—CONTRIBUTORY NEGLIGENCE.—It constitutes negligence *per se* for a person to go upon a railroad track without looking and listening for approaching trains, except where there is an implied invitation to go upon the track without taking those

precautions, or where the situation is such that the person is, in the exercise of reasonable care, misled into believing that no engine or cars are expected.

Appeal from Phillips Circuit Court;   *Hance N. Hutton,* Judge; affirmed.

*Fink & Dinning,* for appellant.

1.   The testimony shows that at the point where the injury occurred, the people, with the knowledge of the defendant and without objection, continually and habitually crossed the tracks, and had done so for years.   The running of a locomotive without giving any warning or keeping a lookout, along by a station, by another train just arriving and over the spot where passengers alight from defendant's trains, is gross negligence, and defendant is liable, whether it was the engineer or the fireman who was negligent.   This case calls for the application of the rule requiring increased vigilance and care in cities and towns where the population is dense.   81 Ark. 191; 129 S. W. (Ky.) 558; 11 S. W. (Ky.) 712.   If appellee's testimony is accepted as true, it is still manifest that it was negligent; for it is affirmatively shown that the fireman was keeping no lookout, and that such failure was the proximate cause of the injury.   63 Ark. 184; 83 Ark. 61; 62 Ark. 186; 93 Ark. 28.

2.   This case falls within the exceptions to the rule requiring persons to look and listen before going upon the tracks of a railroad.   (*a*)   Appellant's intestate was upon appellee's premises for the purpose of assisting an invalid passenger to alight from defendant's train; therefore there by appellee's implied invitation and assurance that he could cross the tracks with safety, and it owed him the duty to exercise, and the burden was upon it to show that it did exercise, reasonable care to protect him from injury.   2 Wood on Railroads, 1523-1525; 55 Ark. 428, 433; 76 Ark. 377, 387; 69 Ark. 496; 59 Ark. 122; 92 Ark. 403; 90 Ark. 278; 57 Ark. 141; 33 Cyc. 805; 138 S. W. (Ark.) 995; 135 S. W. (Ark.) 338; 94 Ark. 20; *Id.* 527. (*b*)   The circumstances were so unusual that the deceased could not reasonably have expected the approach of a train at the time he went upon the track.   2 Wood on Railroads, 1523, 1525; 78 Ark. 358; 83 Ark. 61; 79 Ark. 137, 145; 85 Ark. 326; 207 U. S. 302, 52 L. Ed. 219; 100 Mass. 212, 97 Am. Dec. 96.

3. It is improper to give a peremptory instruction if, from all the facts and circumstances in proof, the minds of reasonable men might differ as to the conclusions to be drawn therefrom. It is only when reasonable minds can draw but one conclusion from the evidence that a court is warranted in giving a peremptory instruction. 89 Ark. 534.

*E. B. Kinsworthy, P. R. Andrews* and *W. E. Hemingway,* for appellee.

1. The court's peremptory instruction was demanded on the ground of Weedman's contributory negligence. The facts of the case do not bring it within either of the exceptions relied on by appellant, and the facts of every case relied upon by appellant to sustain his contention in this respect clearly distinguish it from this case.

There was nothing whatever unusual in the circumstances attending the occurrence, nothing whatever to place him off his guard, to startle him, or to cause him to do anything hurriedly and without proper care and caution.

There is nothing in the contention that deceased was at the place where he was injured by the implied invitation of appellee. If he expected to meet a passenger on the arriving train, the proper place to meet such passenger was at the depot platform, where that train's passengers would alight, and not on the track No. 2 where it was not necessary for him to be. 55 Ark. 435; 69 Ark. 498; 90 Ark. 285, 286; 48 Ark. 106-126.

2. The proof in the case does not disclose any negligence on the part of appellee's employees—and there is neither allegation nor proof of discovered peril; however, in the latter case, appellee would only be liable if the peril of Weedman had been discovered in time to have prevented the injury and failed to exercise reasonable care to do so. 90 Ark. 286.

McCULLOCH, C. J. Plaintiff's intestate, F. A. Weedman, was run over and injured by defendant's switch-engine at its station in the city of Helena, and he instituted this action to recover damages resulting from such injury. He died before the trial below, and the cause was revived in the name of plaintiff as administrator of his estate. On the trial of the case before a jury, after the testimony was all in, the court gave a peremptory instruction to the jury to return a verdict in favor of the

defendant, and a judgment was accordingly entered in defendant's favor, from which plaintiff appealed.

Stating the facts in their strongest light favorable to plaintiff's cause of action, they are about as follows: Defendant's passenger station at Helena faces east, and is situated a short distance within the levee which runs along the bank of the Mississippi River. The tracks run north and south between the station and the levee. Missouri Street runs east and west and intersects the tracks at right angles a short distance—a car's length or two—north of the station. North of Missouri Street the tracks are only used for the storage of cars. The first track next to the station is called Track No. 1, and the next one further east is called Track No. 2. There is a space of about thirty inches between coaches standing on these two tracks. The station is used by the Iron Mountain trains from Wynne, and also by the Arkansas Midland trains which come from Brinkley over another of defendant's branch roads. The Midland train comes in on Track No. 1, and the Iron Mountain train on Track No. 2, the latter being due at 9:50 A. M. and the former about ten minutes later. When the trains are in at the same time, it becomes necessary for debarking passengers from the Iron Mountain trains to walk along the narrow space between the trains and go clear around the Midland train. Weedman was about sixty-two years of age, and lived with his daughter over somewhere near the bank of the river, and came to the station that morning to meet his stepson, who was expected on the Iron Mountain train, and who was crippled and needed assistance in getting off the train. He reached the Missouri Street crossing just as the Midland train came in. The Iron Mountain train, though past due, was not in at that time, nor is there any evidence as to when it was expected or that it was in sight. The Midland engine, which was on track No. 1, was still attached to the train, and there was a switch-engine standing on track No. 2, north of the street. Plaintiff has two theories as to the way in which Weedman got on the track, either of which counsel contend is sustained by the evidence. We do not think the difference is very important, so far as the result is concerned, but the facts will be stated according to both theories. One witness, who was on the Midland train as it came in, testified that Weedman, com-

ing from the east, stepped upon track No. 2, ten or fifteen feet in front of the switch-engine, and turned south with his back to the engine, and in this situation was struck by the moving engine. The other witness testified that Weedman was standing on track No. 1 when the Midland train came in, and to avoid it he stepped over on track No. 2 with his face to the south, and in that situation was struck by the moving switch-engine coming from the north on track No. 2. We do not, as before stated, deem it very material to determine which of these theories should be accepted. It is undisputed that the switch-engine was in plain view, and that Weedman could have seen it approaching if he had looked. The fact that he did not see it, and that while his back was turned he was struck by the engine, is conclusive that he did not look. There is no contention in the case that the engineer or fireman saw Weedman's perilous position in time to have prevented the injury. So, there is no question of discovered peril in the case. The right to recover is based solely upon negligence of the engineer in failing to keep a lookout, and the evidence is sufficient to warrant the finding that the bell was ringing, but that no lookout was kept, and that if the engineer had kept a lookout he would have discovered Weedman's perilous position in time to have prevented injuring him.

It has been ruled in numerous decisions of this court that it constitutes negligence *per se* for a person to go upon a railroad track without looking and listening for approaching trains, except where there is an implied invitation to go upon the track without taking these precautions, or where the situation is such that the person is, in the exercise of reasonable care, misled into believing that no engine or cars are expected. The first exception is stated by this court in the case of *St. Louis, I. M. & S. Ry. Co.* v. *Tomlinson,* 69 Ark. 489, and counsel for plaintiff seek to bring the case within the rule there stated. In that case Judge RIDDICK, speaking for the court, said:

"The rule that one should look and listen for approaching trains before attempting to pass a railway track is often applied in cases for injuries to travellers on highways at railway crossings. In such a case, where there is no invitation on the part of the company for the traveller to cross, the courts can say, as a matter of law, that he should look and listen for approaching trains;

and if he fails to do so, and by reason of such failure is injured, he can recover nothing by way of damages; for, even if the company be negligent, his own negligence contributes to his injury. But the case is different where the injured person comes on the track by the invitation of the railway company. In such a case he must still exercise ordinary care, but, as he has the right to rely to some extent upon an implied assurance of the company that the way is safe, the courts, not knowing to what extent his acts may be influenced by the conduct of the company, can not in such a case say as a matter of law that the mere failure to look and listen is such negligence as precludes a recovery. If, then, a passenger or his escort is injured while attempting to pass an intervening track to reach a depot or train when the circumstances justify him in believing that he is invited by the company to pass over the track, it becomes a question for the jury, after considering all the circumstances, to say whether or not he is guilty of a want of ordinary care."

That was a case where a passenger's escort was run over and killed while, in returning from a coach, he was crossing an intervening track. The plaintiff's case does not fall within that rule, for the Iron Mountain train was not coming in at that moment, it was not in sight, and there is no evidence of when it was expected, and there was no implied invitation for him to walk down track No. 2, as he did, and therefore no assurance that the way was clear for him to do so. His place, while waiting for the train, was at the station. Under the testimony in the case, he is bound to have seen the switch engine when he came on the track, and it was negligence for him to turn his back to it and start down the track. If the Iron Mountain train had been coming in at the time, and it was necessary for him to go to the coach entrance to meet the passenger, then there would have been an implied assurance that the way was clear, and it could not be said, as a matter of law, that he was bound to look and listen, for the invitation to go to the coaches to meet the passenger amounted to an implied assurance that the way was safe, and that no train would interfere with his safe passage.

Nor can the case, under the evidence adduced, be brought within the other exception. Weedman necessarily, as before stated, saw the switch engine when he came on the track, and, as no other train was approaching on that track at the time,

there was nothing to mislead him into believing that the switch engine would not be moved. If the Iron Mountain train had been approaching from the south, then the circumstances would have been such as to induce in his mind a belief that the switch engine would not be moved down the track, and under those circumstances, it could not be said, as a matter of law, that he was guilty of negligence.

The facts of the case do not either bring it within the case of *Choctaw, Oklahoma & Gulf Rd. Co.* v. *Baskins*, 78 Ark. 362, as insisted by counsel. It is unnecessary to discuss the difference between the two cases, for the points of difference are too obvious for comparison.

In any view of the case, plaintiff's intestate was, according to the undisputed facts, guilty of contributory negligence, and there can be no recovery of damages. The peremptory instruction was therefore correct, and the judgment is affirmed.