Cook v. St. Louis, Iron Mountain & Southern Railway Company.

Opinion delivered October 18, 1915.

RAILROADS—INJURY TO PASSENGER AT FLAG STATION—PASSING TRAINS—INVITATION TO OCCUPY PLACE OF DANGER.—Plaintiff, desiring to become a passenger upon one of defendant's trains at a flag station, sig-

nailed the same with a lantern, and stepped to a place between the northbound and southbound tracks of defendant railroad, which was the place where passengers customarily boarded trains at that place. At the same time a freight train approached from the opposite direction at a high rate of speed, leaving the space where plaintiff was standing about three or three and one-half feet, between the passenger and freight trains. Plaintiff, becoming frightened, leaned too far toward the approaching passenger train and sustained injuries. The track being straight, the operatives of the freight train could have seen the signal to the passenger train to stop, but did not slacken the speed of the freight train. *Held,* it was reversible error to instruct the jury to return a verdict for the defendant railway company; the jury should have been permitted to say whether under the circumstances plaintiff, in the exercise of ordinary care, had the right to believe that an invitation was extended to him to occupy the space between the tracks, as the two trains approached each other, and if the jury should so find they may, in measuring appellant's subsequent conduct, take into consideration the implied assurance that the operatives of both trains knew of his presence and would not imperil plaintiff's safety. But the jury may not find that this invitation had been extended to become a passenger in the manner attempted by plaintiff, if they find that this attempt imperiled his safety.

Appeal from White Circuit Court; *J. M. Jackson,* Judge; reversed.

*Brundidge & Neelly* and *Sam M. Wassell,* for appellant.

1.   The court erred in directing the verdict. When appellant went to the station for the purpose of boarding the train, he became a passenger, entitled to a safe place at which to board the train and had the right to assume that the railroad company had provided such a place, and that they would not expose him to unnecessary danger. Under the circumstances it was a question for the jury as to whether or not he acted as a reasonably prudent and cautious man would have done under like circumstances. A different rule applies in the case of a passenger attempting to board a train at a regular station from that applied where one seeks to cross the track of a railroad at a crossing. 59 Ark. 121; 60 Md. 449; 20 Atl. 2; 31 Ind. 408; L. R. A. 6 Q. B., 377; L. R. 9 Q. B. 66; Hutchinson on Carriers, § 616; 26 N. J. Eq.

474; 44 Ark. 322; 96 Ind. 346; 88 Ala. 538; 84 N. Y. 24; 78 N. Y. 338; 18 Col. 368; 88 Pa. St. 327; 100 Mass. 208; 33 Fed. 796; 69 Ark. 499; 102 Ark. 164; 164 Fed. 785; 42 Law. Ed. (U. S.) 491; 31 Pac. 954; 151 U. S. 209; 72 Am. St. Rep. 652; 20 L. R. A. 729; 2 White, Personal Injuries, § 689.

2. Appellant was not guilty of contributory negligence in stepping back between the two trains, because the negligence of appellees employees in operating the freight train placed him in a situation of sudden peril and forced him to act upon an emergency. 2 White, Personal Injuries, § 806; 102 Ark. 505; 55 Ark. 248; 57 Ark. 306; 84 Ark. 241.

*P. R. Andrews* and *Troy Pace,* for appellee.

We concede that the same degree of care is not required of a passenger seeking to board a train that is required of a traveler crossing upon the highway, *provided the train that the passenger seeks to board has stopped and he has had either a direct or an implied invitation to enter.* While the passenger, when the proper time has come to cross the track for the purpose of boarding the train, may properly assume that obstructions of a dangerous character have been removed, whereby he is excused from the use of the same diligence that the traveler is required to exercise, yet, when he sees and knows of the approach of a train upon the track that he is about to cross, and when he is acquainted with the condition and circumstances surrounding the place into which he is to go, he cannot recklessly disregard what his senses have conveyed to him and walk into danger, and then claim exemption from his own carelessness and negligence. 4 R. C. L., § 663; 37 Hun (N. Y.) 128; 6 Cyc. 642; 5 R. C. L. § 681; 69 Ark. 489, 495, 496, 497; Wharton on Neg. § 1 and notes; 95 U. S. 439, 441, 442. Each case must be governed by its own peculiar circumstances, and if the facts are undisputed and but one conclusion can reasonably be drawn therefrom, namely, that the plaintiff was guilty of contributory negligence, it is the duty of the trial court to direct the verdict. 137 S. W.

829, 830; 142 S. W. 527, 531; 76 Atl. 280; 138 Am. St. Rep. 340; 24 Atl. 141; 8 Am. St. Rep. 560; 95 U. S. 701; 2 Woods, Railroad Laws, 1302-1324 and cases cited; 39 La. Ann. 796; 153 Fed. 514; 128 S. W. 1177; 18 L. R. A. (N. S.) 519; 26 Ill. 255; 79 Am. Dec. 374; 55 Ia. 33; 40 La. Ann. 800; 165 Mass. 264; 41 Minn. 178; 17 R. I. 658; 100 N. Y. 632; 153 Fed. 514; 101 Ark. 424, 432; 99 Ark. 167, 171; 132 N. W. 762; 52 S. E. 574.

SMITH, J. Appellant was struck by one of appellee's trains and sued to recover damages to compensate the injury sustained by him. On the trial of the case before a jury, after the appellant had rested his case, the court, upon motion of appellee, directed the jury to return a verdict in appellee's favor, and this appeal has been prosecuted from the judgment pronounced upon the verdict so returned.

Giving appellant's evidence its highest probative force, as we must do in testing the correctness of the action of the court below, the facts in the case may be stated as follows: The injury occured at McRae, which was then an unincorporated village of some 200 persons, and, although appellee maintained a depot there, this was a flag stop station and that only for local trains. The fast or through trains did not stop there even upon signal. The line of railroad was double tracked, the depot being to the east of the tracks, and there was a cinder platform between the depot and the east track for the purpose of accommodating passengers. Trains northbound were run over the east track, the one next to the station, while southbound trains ran over the west track. These double tracks had been in use for more than two years, and appellant lived there at the time they were installed and was acquainted with the conditions The injury occurred about 9 o'clock on the night of November 18, 1913. Appellant went to the depot to take passage on the southbound passenger train. He was accompanied by his daughter and her husband, a Mr. Essig, and when they reached the depot they found it dark and no one there to signal the passenger train to stop. Mr. Essig

had a lantern and when he heard the passenger train approaching, went between the two tracks and flagged this train. The tracks were straight for more than a mile in both directions, and while Mr. Essig was flagging the passenger train a freight train was approaching on the other track, and the engines of the two trains passed each other at the point where Mr. Essig stood with his lantern, and when cars are standing on each track there is a space between them of from 3 to 3½ feet. The witnesses testified that when the passenger train was flagged it responded by blowing one long blast, whereupon appellant and his daughter crossed over between the trains, but before the freight train arrived Mrs. Essig recrossed the track and returned to the platform near the depot. The freight train made no response to the signal with the lantern and passed through McRae at a speed variously estimated by the witnesses at from 30 to 40 miles per hour. Prior to appellant's injury it was customary for passengers who desired to board southbound trains to stand between these tracks as the train approached, and this was the usual thing for persons to do who expected to take passage on southbound trains, and this custom had been in force ever since the double track had been built up to the time of appellant's injury. At the time the passenger train was flagged it was about a quarter of a mile away, while the freight train, which was approaching in the opposite direction, was then about one mile distant. Appellant and Mr. Essig did not know what the freight would do, but they got between the tracks so that they would not miss the passenger train, and they did not think there would be any danger because they supposed the train would stop for the passengers to get on, and they thought the freight train would stop below the public crossing near the depot, for the reason that the lantern had been waived in plain view of the approaching freight train, and the engineer of that train would be aware of their presence and purpose. Appellant and Mr. Essig did not cross entirely over to the west side of the track

because there was a ditch there, and the train was a vestibuled one and the cars were not opened on the west side and the passenger train could have been entered only on the east side. Appellant knew that the passenger train made only very short stops at McRae and he feared that he would miss the train if he was not in position to enter it immediately after it stopped. As the freight train passed the passenger train, appellant became panic stricken and although Mr. Essig sought to restrain him he stepped away from the freight train far enough to be struck by the beam on the passenger engine. Had he remained standing still as Mr. Essig did he would not have been injured, but he stepped back involuntarily because of his fright.

It does not appear whether the court directed a verdict because the proof failed to show that the railroad company was guilty of any negligence, or because it did show that appellant was guilty of contributory negligence; but appellee insists that the verdict was properly directed in its favor under either view.

We think the jury might very well have found from the evidence that appellant should not have gone between the trains, and such a finding would not be disturbed by us. But we cannot say that the jury must necessarily have taken this view of the evidence, and that reasonable minds could not fairly reach any conclusion except that appellant was guilty of contributory negligence. The jury must have found, as testified to by appellant, that a custom existed prior to his injury for passengers to stand between the tracks as an approaching train was being flagged, and that the engineer of the freight train saw or should have seen appellant and should have known his purpose in standing between the tracks.

The law sets up for both the railroad company and the appellant the same standard of duty, and that is to exercise ordinary care to avoid the infliction of an injury and to avoid being injured, but as to what would be ordinary care in a particular case depends upon the

exigencies of that situation. In determining the questions of negligence and contributory negligence involved in this case it is proper to bear in mind that both appellant and the operatives of the train had the right to assume that the other would be guilty of no negligent act nor be guilty of contributory negligence. Applying these tests it may be asked, would a reasonably prudent man have had the right to believe that an invitation was extended under the circumstances to stand between the tracks as the trains approached each other? If there was such an invitation, then there was an implied assurance that the space between the tracks was safe. But there could be no such invitation or assurance if it appeared to a reasonably prudent person, exercising ordinary care for his own safety, that it was not safe to stand between the tracks, that is, appellant could not place himself in a position of peril and excuse himself for being there by saying that he was invited there, if it was apparent to him, in the exercise of ordinary care, that the place was dangerous. And if he knew the place was dangerous he could not justify his occupancy of it by saying that he did so for the purpose of embarking on the passenger train when it stopped, and this is true even though his action in not going between the trains might have resulted in his missing the train. Under these circumstances such a manipulation of the trains as would have caused appellant to fail to catch the train would have conferred a cause of action on him on that account, but the fact that he would have had this cause of action, for not being received as a passenger, could not justify the commission of a negligent act.

Before there could be any recovery in this case it would be necessary for the jury first to find that the railroad company was guilty of some negligence in the operation of its freight train, as it is not claimed that there was any negligence in the operation of the passenger train. This negligence is said to consist in running the freight train at an excessive speed under the circumstances, and in failing to keep a proper lookout

and thereby discovering appellant's presence between the tracks. The Lookout Statute approved May 26th, 1911, has been several times recently construed by this court. One of the latest of these cases is that of *Russell v. St. L. S. W. Ry. Co.,* 113 Ark. 353. In that case we said that mere proof of an injury to a person by the operation of a train is insufficient to establish liability under the Lookout Statute, and that there must be sufficient evidence to warrant the finding that the presence of the injured party could and would have been known to the operatives of the train and the injury averted by the keeping of the lookout and the exercise of care after discovering the presence of the person in peril. The evidence here meets the requirements of that case, because the engineer on the freight train must have seen the signals with the lantern, had he been keeping a lookout, and he would thereby have been charged with knowledge of the fact that appellant was standing between the tracks. Appellant did not know how far apart the trains were at the time he flagged the passenger train, nor did he know what action the freight train would take, while the engineer of the freight train, of course, knew what his own action would be and had more definite information about the distance between the trains and where they would probably pass.

We think it can not be said as a matter of law that the space between the tracks was necessarily a dangerous one, but that this is one of the questions of fact which should be passed upon by the jury. In determining that question the jury would have the right to take into consideration all the facts and circumstances in proof, including appellant's purpose in being there to become a passenger, and his conduct while the trains were passing. If the place was necessarily a dangerous one, then appellant was guilty of contributory negligence, and can not recover, whatever may have been his purpose in being there. But if the place was not necessarily dangerous, but was made dangerous only by the rocking and swaying of the freight train on account of its speed, then the jury would be

warranted in finding that appellant was not guilty of contributory negligence by going between the tracks. In that event the further question would arise as to whether or not he was guilty of contributory negligence in not standing in the center of the space between the tracks as Mr. Essig did, and in determining this question, the jury would have the right to take into consideration the conditions existing at the time, creating an emergency which caused and excused the fright that was responsible for his act in stepping back in the way of the passenger train. In the case of *Chicago, R. I. & P. Ry. Co.* v. *Stepp,* 164 Fed. Rep. 785, the facts were as follows: There were double tracks running east and west with a space between of ten feet, and passengers were accustomed to get off and on trains on the north track on the south side. As deceased reached the depot, the westbound train which he intended to take pulled in and stopped. It consisted of six coaches, and the locomotive was at a point 70 or 100 feet west of the depot, and was emitting smoke and steam which was blown across the south track. On this south track another train was approaching from the west. Deceased crossed the south track and endeavored to board the westbound train, but it was a vestibuled train, and the door of the car was closed. He hurried forward to the next car and found that door also closed. The train was then moving and deceased held to the hand-hold and tried to get on the train while it was in motion. He had some conversation with an employee on the rear platform, and then abandoned his efforts to gain admittance and turned to go south to the station to wait for the next train. The second step brought him upon the south track where he was struck by the other train which was running at a speed of 40 to 50 miles per hour. The railway track was straight and unobstructed for a distance of more than a mile.

Upon these facts the court said: "It was also for the jury to say whether the defendant was guilty of negligence in running its train past the station at the high rate of speed which is admitted. Our attention is called to numerous cases in which it is stated that rail-

roads are themselves to be the judges of the speed at which they will run their trains, and that their judgment as to the proper requirements on this subject can not, as a matter of law, be held to constitute negligence. In the cases in which the language was used the situation involved the speed of trains in the open country, and as to those situations the language was entirely proper. But negligence depends upon circumstances. It is too plain for controversy that railroads can not be given an unrestricted discretion as to the speed at which they will run trains through station grounds. At such points railroads must operate their road with due regard to the safety of the public, and, if the matter were to be determined as a matter of law, we should have no hesitancy in saying that it was plainly negligent for the defendant to run its train past the station at Randolph, under the conditions existing there at the time, at the speed of 40 miles an hour.'' And discussing the question of deceased's contributory negligence, the court further said: ''Was the deceased guilty of contributory negligence in failing to look and listen before attempting to cross the track upon which he met his death? It is conceded that he took neither of these precautions. If, however, he was entitled to the rights of a passenger while on the platform, he was not required to do so. It is now the settled rule of the Federal courts that passengers using station premises for the purpose of taking or leaving trains have the right to assume that the place is one of safety, and to act upon that assumption. While they are not absolved from all care, they are not required to exercise that high degree of care which the law imposes upon travelers when approaching the intersection of a highway and a railroad.

The traveler upon the highway has no right to assume that the railroad is a place of safety, or that trains will not be run over it while he is attempting to pass. On the contrary, the rule has been repeatedly declared that such a crossing is a place of danger, and that the traveler must approach it with the knowledge that the company may at any time be moving trains over its road. This is the

ground of the difference between the rule as to a passenger while upon station grounds and a traveler upon the highway. The one has the right to believe that the place which he is using is one of safety, while the other is bound to know that the place which he is approaching is one of imminent danger. Upon the basis of this difference, the rule is now firmly established that a passenger, before crossing a track while taking or leaving a train, is not required, as a matter of law, to look and listen for approaching trains. He is simply required to exercise reasonable care in the light of all the circumstances existing at the time, and whether he exercises that care is a question of fact for the jury. (Cases cited.) This rule is based upon the soundest consideration of public policy. While taking or leaving a train, the attention of passengers is necessarily absorbed in a multitude of considerations which make it impossible for them to exercise a careful watchfulness for approaching trains. There is usually considerable noise at such places. Frequently there is the meeting or leaving of friends. As a rule, there is also haste and confusion. These and many other familiar circumstances confuse the mind, and render watchfulness impossible. The situation of Mr. Stepp is itself an impressive illustration. He arrived at the station a little late, and hastened to take the train. He rushed from one platform to another to enter, but found all entrances to the train barred. With his mind bewildered by this experience, he turned to go to the depot to wait for the next train, and was immediately struck and killed. All the circumstances mentioned were such as would throw the ordinary person off his guard, and to hold that one so situated ought to exercise the same care as a person approaching a highway crossing would be to confound situations that are fundamentally different and encourage carriers to disregard the safety of the public.''

In the case of *Hays* v. *St. Louis, I. M. & S. Ry. Co.,* 102 Ark. 160, it was said:

''It has been ruled in numerous decisions of this court that it constitutes negligence *per se* for a person to

go upon a railroad track without looking and listening for approaching trains, except where there is an implied invitation to go upon the track without taking these precautions, or where the situation is such that the person is, in the exercise of reasonable care, misled into believing that no engine or cars are expected.''

And in the opinion in that case, the court quoted with approval from the case of *St. Louis, I. M. & S. Ry. Co.* v. *Tomlinson,* 69 Ark. 489, the following language:

''But the case is different where the injured person comes on the track by the invitation of the railway company. In such a case he must still exercise ordinary care, but, as he has the right to rely to some extent upon an implied assurance of the company that the way is safe, the courts, not knowing to what extent his acts may be influenced by the conduct of the company, can not in such a case say, as a matter of law, that the mere failure to look and listen is such negligence as precludes a recovery. If, then, a passenger or his escort is injured while attempting to pass an intervening track to reach a depot or train, when the circumstances justify him in believing that he is invited by the company to pass over the track, it becomes a question for the jury, after considering all the circumstances, to say whether or not he is guilty of a want of ordinary care.''

While we recognize this as a border-line case upon the question of liability, we are still of the opinion that the jury should have been permitted to say whether under the circumstances, appellant, in the exercise of ordinary care, had the right to believe that an invitation was extended to him to occupy the space between the tracks as these trains approached each other, and if the jury should so find they may, in measuring appellant's subsequent conduct, take into consideration the implied assurance that the operatives of both trains knew of his presence and would not imperil his safety. But, as has been said, the jury would have no right to find that this invitation had been extended to become a passenger in the manner attempted by appellant if they find that this at-

tempt imperiled his safety. The judgment of the court below will, therefore, be reversed, and the cause remanded.