ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY
*v*. PYLES.

Opinion delivered June 29, 1914.

1. RAILROADS—INJURY TO SERVANT—RIGHT TO RIDE ON FREIGHT TRAINS—INVITATION.—Although plaintiff, an employee of defendant railway company, had a pass entitling him to ride on all its trains, including fast freight trains, the right to board a freight train at any place, *held* not to imply an obligation on the part of the company to furnish him a safe place and opportunity to board said freight train at any point in the company's yards.

2. RAILROADS—RIGHT TO BOARD FREIGHT TRAINS—INJURY TO SERVANT.—The servant of a railway company, although having the right to board and ride on freight trains, does board such a train, away from the station, and at a tank or coal chute, at his own risk, unless the servants of the company were guilty of some negligence in the operation of the train which resulted in his injury.

3. NEGLIGENCE—INJURY TO LICENSEE—DUTY OF CARE.—The bare permission of the owner of private grounds to persons to enter upon his premises does not render the owner liable for injuries received by such licensee on account of the condition of the premises.

4. RAILROADS—INJURY TO LICENSEE—LIABILITY.—Where an employee of defendant railway company, in order to board a freight train, upon which he was entitled to ride, but upon which it was not his duty, nor was he invited by defendant to ride, and was injured while walking through defendant's yards, by falling over a pile of coal in a footpath, he will be held to be a mere licensee upon defendant's premises, and to have undertaken to board the train at his own risk.

Appeal from White Circuit Court; *J. M. Jackson*, Judge; reversed.

*E. B. Kinsworthy, P. R. Andrews* and *W. G. Riddick*, for appellant.

1. Appellee was a bare licensee. There is nothing to indicate an invitation to an employee to use the path.

The use was merely permissive, and those who used the path, took the privilege with its concomitant peril. 103 Ark. 226; 83 *Id.* 300; 33 Cyc. 758; 112 Ga. 668; 122 Ia. 360; 66 Oh. St. 509; 90 Am. St. 602; 3 Elliott on Railroads, § § 1251-1303; 4 *Id.*, § 1579.

2.   A railway company is under no duty to repair its tracks or keep its yards in any particular condition for trespassers and licensees; they assume the risk. 2 Thompson on Negl., § 1760; *Ib.*, § 1848; 106 Ark. 390; 141 Mich. 75; 33 Cyc. 761.

3.   The coal was not the proximate cause of the injury. 84 Ark. 270.

*S. Brundidge, J. W. & J. W. House, Jr.*, for appellee.

1.   There was an implied, if not a positive, invitation for appellee to board this particular train at this particular place. He had a pass, was an employee, and is entitled to recover. 96 Ark. 638; 89 *Id.* 103; 85 *Id.* 326; 81 *Id.* 187. This pathway was universally used and the presumption is that the railroad company acquiesced. 79 Ark. 157; 103 Ark. 226; 90 Fed. 783; 45 Oh. St. 11; 12 N. E. 451; 38 Atl. 236; 41 A. & E. R. Cases (O. S.) 501; 69 Vt. 555; 97 S. W. 1122; 193 F. 603; 126 Ill. App. 601; 133 N. W. 672; 132 S. W. 992; 4 Hun. 760; 3 Am. Rep. 628; 57 *Id.* 446; 88 S. W. 192; 27 *Id.* 27; 64 N. E. 582; 85 Ky. 224; 16 Utah 42; 43 S. E. 39; 36 C. C. A. 361.

2.   Where a person, by reason of some peculiar circumstance, has his attention directed to some other object and momentarily forgets the danger incident to travel, that does not amount to negligence *per se,* and is a question for the jury. 99 Ark. 254; Am. Ann. Cases, 1913, D. 37; 183 N. Y. 506.

3.   The mere posting of a sign is not sufficient. 135 Mass. 352; 163 *Id.* 330; 65 Ill. App. 649.

McCULLOCH, C. J.   The plaintiff was struck, knocked down and seriously injured by one of the defendant's freight trains in the railroad yards at Gurdon, and he instituted this action to recover damages on account of such injuries.

He was going down a pathway between the main track and a sidetrack for the purpose of boarding a train, when he stumbled over a pile of coal, about two feet high, in the pathway, and fell under the slowly moving freight train on the main track, and one of his legs was cut off just below the knee, and the other foot was cut through just about the instep. This occurred about midnight. The pile of coal which obstructed the pathway fell from the coal chute while the men were placing coal in the engines. It was about 2,500 feet south of the station at Gurdon, and the freight train had stopped at the coal chute for the purpose of taking on coal.

Plaintiff was employed by defendant railway company in the supply department, his duties being to travel with the supply cars and distribute oil. He had been to El Dorado with his oil cars, and returned to Gurdon enroute to Argenta. It was Saturday night, and he was to join the oil cars at Argenta on Monday morning, to go to McGehee, on another division of the road. The foreman of his department also accompanied the cars, and plaintiff obtained permission of the foreman to leave the oil cars at Gurdon and make his way back to Argenta that night on another train without waiting for the cars to be transported the next day. Plaintiff, after getting his lunch at an eating house near the station at Gurdon, saw the freight train stop at the coal chute, and decided to go down there and board the caboose to ride to Little Rock. He had a pass which permitted him to ride on all kinds of trains, including through freight trains. He started down the track hurriedly to reach the caboose before the train moved, and when he got nearly to the engine, the train started, and he quickened his gait and was going, as he describes it, "in a trot," when he stumbled over the pile of coal and fell. The train was going very slowly when plaintiff fell, and his feet were thrust under the train and the wheels struck him before he could extricate himself.

The evidence tends to show that the pile of coal fell from the chute and had accumulated there for a day or

two. There was a space of nine feet between the main track and the passing track, and there was a well beaten path along there which was used by employees, and also by the public to some extent. There was a sign there, erected by the company, warning trespassers from the tracks and right-of-way.

Plaintiff testified that he had been to Gurdon a time or two before, and had seen employees and others walking along that path. He stated also that he had seen employees get off trains down at the coal chute and walk up to the depot along that path.

The only charge of negligence against the company is in permitting the pile of coal to accumulate in the path and in allowing it to remain there as an obstruction to those who attempted to use the path.

(1-2) Plaintiff had the right to ride on freight trains, and it can not be said that he was not traveling on the business of the company in returning from Gurdon to Argenta. But he was not required to travel on that particular train. He was not acting under the immediate command of his superior when he undertook to board the train. While he had the right to board the freight train wherever it might be found for the purpose of riding on the company's business, the pass which enabled him to ride on through freight trains was not an invitation to board them wherever found. In other words, his right to board freight trains wherever found did not imply an obligation on the part of the company to furnish him a safe place and opportunity to board them. If he saw fit to board a freight train away from the station at a tank or coal chute, he did so at his own risk, unless the servants of the company were guilty of some negligence in the operation of the train which resulted in his injury. So, the fact that the plaintiff was going down the path for the purpose of boarding the train adds no strength to his cause of action, and his right to recover must exist, if at all, upon the obligation of the company to keep the path clear for the benefit of any one who saw fit to use it.

Now, the evidence establishes the fact that, notwithstanding the warning posted by the company, the path was a well beaten one, and was frequently used by employees and oftentimes by any one else who saw fit to use it. This, however, was, at most, only a license which was extended, notwithstanding the warning, if the path was used openly with the acquiescence of those in charge of the yards.

(3) It is well settled, however, that a bare licensee under circumstances of this kind is not entitled to any affirmative act of protection on the part of the owner who grants the license. In this respect the case stands the same as if some one else owned the premises instead of the railway company.

"The bare permission of the owner of private grounds to persons to enter upon his premises does not," said this court in the case of *St. Louis, I. M. & S. Ry. Co.* v. *Dooley,* 77 Ark. 561, "render him liable for injuries received by them on account of the condition of the premises."

In that case the defendant, the railway company, had erected a stile over a fence along the right-of-way and permitted the same to get out of repair, and the plaintiff was injured on account of the breaking down of the steps. The question arose whether the company had invited the public to use the steps, and there was enough evidence to show such an invitation, and the company was held liable, but in doing so, this court unqualifiedly laid down the rule that the granting of a mere license to use a way through an owner's premises does not imply an obligation to keep the same in repair.

The same principle was announced by this court in the recent case of *Chicago, R. I. & P. Ry. Co.* v. *Payne,* 103 Ark. 226. There the public had been permitted to use, with the acquiescence of the company, a road or path along the right-of-way, and negligence was ascribed in allowing a ditch across the right-of-way to get out of repair, on account of which the plaintiff was injured while attempting to pass along. The court said:

"The undisputed evidence shows that appellee was a mere or bare licensee. She was using the footpath upon appellant's right-of-way for her own convenience, and not for any purpose connected with the business of appellant, or for the common interest or mutual benefit of appellant and appellee. Appellant did no affirmative act to compel or induce appellee to use the footpath upon its right-of-way. It merely acquiesced in such use by appellee and the public. Under such circumstances, it can not be said that there was any implied invitation upon the part of appellant for the use of its right-of-way by appellee. Appellant therefore did not have to exercise ordinary care to make the pathway safe for appellee. As appellant had done nothing that could be construed as an invitation to appellee and the public to use its right-of-way for a footpath, appellant was not negligent, because, in draining its right-of-way, it failed to exercise ordinary care to make and leave the footpath safe for appellee."

(4) Now, in the present case, there is not the slightest evidence to indicate that the pathway was used in a way that an invitation can be implied on the part of the railway company to the public or its employees to use it. The use was, at the most, merely permissive, and those who used it were licensees, who took the privilege with its concomitant peril.

Neither was there any command or invitation to the plaintiff to use the path for the purpose of reaching the freight train, and he was a mere licensee in going down there to board that train. As we have already seen, the company owed him no duty to furnish him a safe place to board the train at the coal chute or at any place other than at the station, and when he chose to board the train at that place, he did so at his own risk.

We are unable to discover any theory in the law upon which plaintiff is entitled to recover damages, and as the evidence is undisputed, no useful purpose would be served in remanding the case for a new trial. The judgment is therefore reversed and the cause dismissed.