## Ruth Garvey *v.* A. J. Michaud et al.

January Term, 1936.

Present: Powers, C. J., Slack, Moulton, Thompson and Sherburne, JJ.

Opinion filed May 5, 1936.

*J. Boone Wilson, Charles F. Black,* and *Willsie E. Brisbin* for the plaintiff.

*James B. Donoway* and *Fenton, Wing & Morse* for the defendant Michaud.

*Wayne C. Bosworth* for the defendants Dow and Malzac.

THOMPSON, J.   On November 15, 1933, the plaintiff while riding with the defendant Michaud in his Chevrolet automobile

as his guest, received personal injuries when his car collided with a truck owned by defendant Dow and operated by defendant Malzac. Suit was brought against Dow as the owner and Malzac as the operator of the truck, alleging negligence by each in the operation of the truck, and against Michaud, alleging gross negligence by him in the operation of his car. It is alleged further that the negligence of each defendant was a proximate cause of the accident. There was a trial by jury with a verdict and judgment for the plaintiff against the defendant Michaud, and a verdict and judgment for the defendants Dow and Malzac.

The allegations of gross negligence against the defendant Michaud, hereinafter referred to as the defendant, are:

1. That knowing the icy condition of the road, he drove his car at an unsafe and unreasonable rate of speed;

2. That his car was not equipped with adequate brakes;

3. That he did not govern the speed of his car and keep a reasonable distance in the rear of the truck to provide for a stop without collision in the contingency that the truck should suddenly stop.

4. That he did not observe the road carefully in front of him to avoid collision;

5. That he failed to have his car under control in view of the circumstances.

At the close of the plaintiff's case, and again at the close of all the evidence, the defendant moved for a directed verdict in his favor on the grounds that, viewing the evidence in the light most favorable to the plaintiff, there was nothing that indicated an indifference on the part of the defendant to observe his duty toward the plaintiff, or that indicated an utter or partial forgetfulness on his part of her safety, and that even though there might be some negligence in the case attributable to the defendant, there was not such a degree of culpable negligence as amounted to gross negligence as defined by this Court. Both motions were denied, and the defendant was allowed an exception to the denial of each motion. The defendant waived

his exception to the denial of the first motion by proceeding with the trial and introducing evidence, so we consider only the exception taken to the denial of the motion made at the close of all the evidence.

The plaintiff is the sister-in-law of the defendant, and for the past six years she and her husband and the defendant and his wife have lived in the same house in Bristol. During all times material here the defendant owned and operated a car. The plaintiff had ridden a great deal with him in his car as she and her husband did not own one. The defendant invited the plaintiff to ride to Burlington with him on the afternoon of the day of the accident. She went with him and sat on the front seat. Her young daughter sat alone on the rear seat. The defendant's car was a 1933 Chevrolet, equipped with mechanical, four-wheel, internal brakes which were in perfect condition.

The main road from Bristol to Burlington runs westerly in the direction of New Haven Junction by certain local points referred to in the testimony as Daniel's Corners and Russell's Corners. It is approximately two miles from Bristol to Daniel's Corners, and about one and one-half miles from Daniel's Corners to Russell's Corners. There is a hill, called Russell hill, in the road near Russell's Corners with a rise on its easterly slope to its crest of eleven and one-half feet in two hundred and seven feet, and with a drop in elevation from the crest of the hill on its westerly slope of two feet and five inches in one hundred and forty-three feet on a fairly uniform grade. The finished surface of the road is approximately eighteen feet wide. A road intersects the main road at from one hundred and twenty to one hundred and forty feet west of the crest of the hill. The accident happened at or near the intersection.

The road was icy all the way from Bristol to the place of the accident. There had been a snow storm the night before, and the surface of the road was not soft snow but snow frozen on the surface, which made it more slippery. There was considerable traffic on the road by cars and trucks traveling in both directions. The defendant had not been over the road that day but he was familiar with it and the place where the accident happened.

Defendant Malzac was hauling gravel in a truck owned by defendant Dow from Bristol to a place westerly of where the accident happened over the road the defendant was traveling. The truck was a one and one-half ton heavy duty truck, registered to carry three tons, and it was carrying that weight at that time. When the defendant first saw the truck he noticed that it was heavily loaded. The truck was ahead of the defendant's car all the way from Bristol to the place of the accident. Malzac gave one Booska, who was walking from Bristol to his home in New Haven town, a ride on the truck. Booska wanted to get off the truck at the intersection where the accident happened. Malzac knew where Booska wanted to get off the truck, and Booska told Malzac that if he would slow down he would jump off the truck without causing him the trouble to stop.

Briefly stated, it appears from the uncontradicted evidence that the accident happened as follows: The defendant, traveling about thirty miles an hour, followed the truck up Russell hill. After the truck passed over the crest of the hill, and when it was from about one hundred and twenty to one hundred and forty feet west of the crest of the hill, Malzac either stopped it or reduced its speed to three or four miles an hour so that Booska could jump off its running board. As the defendant, following the truck, approached the crest of the hill he saw that the truck was reducing its speed. He started to reduce the speed of his car, and when he was ten or twenty feet west of the crest of the hill he applied his brakes. That set the four wheels of his car, and he then slid down the hill on the icy road from about one hundred and ten to one hundred and twenty feet into the rear of the truck. The plaintiff received her injuries when the defendant's car and the truck collided.

No claim is made by the plaintiff that there was any negligence on the part of the defendant in the operation of his car before he arrived at the foot of the hill that was a proximate cause of the accident, so we confine our examination of the evidence to what happened after he arrived at the foot of the hill. That evidence is found mostly in the testimony of the plaintiff and of the defendant, and there is little conflict, if any, in their testimony.

Viewing the evidence in the light most favorable to the plaintiff, the following additional facts appear: At all times material, the defendant's car was from thirty to seventy-five feet behind the truck. When the truck arrived at the foot of the hill its driver put on extra speed to go up the hill, and it drew away from the defendant's car. When the truck started up the hill the defendant's car was from fifty to seventy-five feet behind it. The truck started up the hill at about twenty-five or thirty miles an hour, but, being heavily loaded, it slowed down and it went over the crest of the hill at about fifteen miles an hour. At times, when the truck was going up the hill, the defendant's car was quite close to it, and at other times it was farther away. The defendant did not at any time attempt to pass the truck. He did not change his rate of speed when going up the hill, and when he arrived at its crest he was nearer to the truck than when he was at the foot of the hill. As he approached the crest of the hill he noticed that the truck did not gain momentum after it passed over it and that it was slowing down. He then applied his brakes and began to reduce the speed of his car. The brake marks of his car on the surface of the road showed that when he applied his brakes and set the four wheels of his car he was from ten to twenty feet west of the crest of the hill, and that the wheels remained set up to the time of the collision. At the time he applied his brakes the truck was from fifty to seventy-five feet ahead of him on the westerly side of the hill, and from twenty to twenty-five feet from the place of the accident.

It appears from the uncontradicted evidence that there was no stop-light on the truck, and that Malzac did not give any signal or warning of his intention to slow the speed of the truck or to stop it. The defendant testified that after the truck passed over the crest of the hill it stopped before it arrived at the place of the collision. Malzac denied that the truck stopped before the collision occurred. There was a mirror on the truck. Malzac testified that he looked into the mirror twice, once when he was on the crest of the hill, and again when he was going down the hill, but he did not see the defendant's car behind him; that after he passed over the crest of the hill and was approaching the place where Booska wanted to get off the truck, he slowed the speed of the truck to three or four miles an hour

so that Booska could jump off its running board without his having to stop the truck; that after the collision, which he did not notice or feel, he traveled westerly about eighty feet before he was aware there had been an accident, and then he stopped.

When Malzac slowed or stopped the truck, he was about to meet a car coming from the west and traveling towards Bristol. The defendant saw that car just as he was about to apply his brakes. He did not see it before because the hill had shut off his view of it. That car passed the truck just as the collision occurred. The defendant testified that when he passed over the crest of the hill he was traveling from twenty to twenty-five miles an hour. The plaintiff testified that at that time the defendant's car was traveling about twenty-five or thirty miles an hour "or a little more or little less." The defendant did not have chains on his wheels, but there is no evidence that his failure to use chains was negligence.

After the defendant had testified as to the speed of his car when he passed over the crest of the hill, he was asked, "And did you gradually slow down from that speed?" and he replied, "Well, all I could because when I put on my brakes on the condition of the road being icy, my car started to waver, and which I done was to keep it as straight as I could." He testified further that when he was fifteen or twenty feet from the place of the collision he had reduced his speed to ten or twelve miles an hour. The truck and the defendant's car were both on their right-hand side of the road when they collided. There was a bank about two and one-half feet high on the northerly side of the road, level with the shoulder of the road, that came down to within twenty or thirty feet of the place where the accident happened.

The plaintiff contends that the foregoing facts make a case of gross negligence on the part of the defendant in the operation of his car. Gross negligence has been defined in *Shaw, Admr.* v. *Moore,* 104 Vt. 529, 531, 162 Atl. 373, 86 A. L. R. 1139, and *Dessereau* v. *Walker,* 105 Vt. 99, 101, 163 Atl. 632, and it is not necessary to repeat what has been stated therein.

The allegation that the defendant's automobile was not equipped with adequate brakes, is not supported by the evidence. In fact, the evidence is all the other way. Nor is the allegation that the defendant did not observe the road carefully

in front of him to avoid collision, supported by the evidence. It appears from the uncontradicted evidence that he was watching the road and the truck carefully as the truck ascended the hill and as it descended on the other side, and that he saw everything that the truck did.

While the defendant may have made a mistake in judgment, which amounted to negligence, in driving too close to the truck as he followed it up the hill, or in suddenly applying his brakes so that the wheels of his car were set, there is nothing in the evidence that indicates an indifference by him to his duty to his guest, or an utter forgetfulness of her safety. The defendant's operation of his car did not evoke any protest from the plaintiff, although she testified that she did not protest because she feared if she did he would drive faster.

■ The defendant, as he followed the truck, had the right to assume that its driver would obey the law of the road and would not stop it, or slow its speed, as he was about to meet a car coming from the opposite direction, without giving adequate warning of his intention to stop or slow down, and he had the right to proceed upon that assumption until he saw, or ought to have seen, that it was not warranted. *Hatch* v. *Daniels*, 96 Vt. 89, 93, 117 Atl. 105; *Dumont* v. *Cromie*, 99 Vt. 208, 214, 130 Atl. 679; *Jasmin* v. *Parker*, 102 Vt. 405, 417, 148 Atl. 874; *Chaffee* v. *Duclos*, 105 Vt. 384, 389, 166 Atl. 2; *Sulham* v. *Bernasconi*, 106 Vt. 192, 201, 170 Atl. 913.

When the defendant applied his brakes and set the four wheels of his car, he was caught in a trap. It would have been dangerous for him to have attempted to go up the bank on the northerly side of the road and pass the truck on its right. He could not pass the truck on its left because there was a car coming from the opposite direction. His car was sliding down the hill towards the truck all the time. When he was a few feet from the place of the collision he had reduced the speed of his car to ten or twelve miles an hour, and he kept his car straight on its side of the road up to the time of the collision, which, probably, under the circumstances, was all that he could do.

■ While the defendant may have been negligent in getting into such a perilous situation, he was not wholly to blame for it. Other circumstances, over which he had no control, contributed to that situation. The evidence is sufficient to warrant

234

a finding that the defendant was guilty of negligence in the operation of his car, but it is not sufficient to warrant a finding that he was guilty of gross negligence. The court below erred when it denied the motion of the defendant for a directed verdict. The judgment against the defendant Michaud is reversed, and judgment for him to recover his costs.

When a jury was being impaneled in the trial below, the plaintiff challenged certain jurors for cause and objected to their sitting on the case on the ground that they were financially interested in the outcome of the litigation, and therefore disqualified from serving as jurors. The challenges of the plaintiff were overruled, she was allowed exceptions, and she has filed a bill of exceptions.

The defendants Dow and Malzac have filed a motion in this Court to dismiss the exceptions of the plaintiff and to affirm the judgment below in their favor, on the ground that the position taken by the plaintiff as to the consideration of her exceptions by this Court amounts to a waiver of her exceptions. It is not necessary for this Court to consider that motion, and we do not consider it, as the exceptions of the plaintiff do not present a case that entitles her to a new trial against the defendants Dow and Malzac.

The case was tried at the December Term, 1934, of Addison County court. On the opening day of the term the court made certain inquiries of the veniremen who had been summoned to serve as jurors. One of the questions asked was:

"Are any of you policy holders in a mutual insurance company? What I mean by this is if you have insurance on your automobile or any other kind of insurance in which the amount of the premium that you pay depends upon the losses that that particular company has to pay during the year. For instance, one such company that does business here in Vermont is the Lumberman's Mutual Liability Company. I use that just as an example."

In response to that question, one venireman answered: "I am insured in the Farm Bureau Mutual;" one replied: "In the Farm Bureau;" another replied: "I am also insured in the Farm Bureau;" and eight replied: "Farm Bureau."

The case of the plaintiff as to the disqualification of the challenged jurors is based solely upon the theory that such jurors were disqualified because they were policy holders in the insurance company that had insured the defendants Dow and Malzac against liability, and which company had a pecuniary interest in the outcome of the litigation; and she assumes that the name of that company is the "Farm Bureau Mutual Insurance Company." It is true that the company that insured the defendants Dow and Malzac had a pecuniary interest in the outcome of the litigation, but it does not appear that they were insured by a company with the name "Farm Bureau Mutual Insurance Company."

Before a jury was impaneled, the attorney for the plaintiff, in chambers, called Wayne C. Bosworth, Esq., attorney of record for the defendants Dow and Malzac, as a witness, and elicited from him that the defendant Dow was insured in the "Farm Bureau Mutual Automobile Company," and that certain liabilities of the defendant Malzac might be covered by that policy.

█ The competency of a juror will be presumed until the contrary is shown; and the burden is upon the challenging party to establish the disqualification of the juror. *Hammond & Burt* v. *Noble,* 57 Vt. 193, 203; *Richards* v. *Moore,* 60 Vt. 449, 451, 15 Atl. 119.

█ █ In order to prove that the challenged jurors were interested in the outcome of the litigation, it was necessary for the plaintiff to establish two preliminary facts: (1) That the challenged jurors were insured in the Farm Bureau Mutual Automobile Company, and (2) that under the charter and organization of that company the assessments of the policy holders were increased by the amount of the losses of the company. Those were facts to be determined by the court on the statements of the challenged jurors and the other evidence introduced on those questions. No finding of facts on those questions was made by the court, and no exception was taken by the plaintiff to the failure of the court to find the facts.

In such circumstances, it will be presumed, in support of the judgment below, that the ruling of the court that the jurors were competent to sit on the case was correct.

236

*Judgment against defendant Michaud is reversed, and judgment for him to recover his costs; judgment for defendants Dow and Malzac is affirmed.*