## CONWAY v. O'BRIEN.

### No. 287.

Circuit Court of Appeals, Second Circuit.

April 29, 1940.

Fenton, Wing & Morse and Walter S. Fenton, all of Rutland, Vt., for appellant.

Herbert G. Barber and Fenton E. Batton, both of Brattleboro, Vt., for appellee.

Before L. HAND, AUGUSTUS N. HAND, and PATTERSON, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from a judgment entered upon a verdict, holding the defendant, O'Brien, liable for a collision between a motor car which he was driving and another car, driven by one Wilson, upon a little travelled country road in Vermont. The plaintiff was a passenger in O'Brien's car, and her right of action for injuries depends upon the "Guest-Occupant" law of Vermont (Public Laws of Vermont § 5113), by which the operator of a motor is not liable for injuries to "any occupant of the same" unless the operator receives pay for carrying the occupant, "or unless such injuries are caused by the gross or wilful negligence of the operator". The only point we shall consider is whether the evidence of the defendant's "gross * * * negligence" was enough to support a verdict. The collision happened just south of a covered bridge crossing a small river running east and west; O'Brien was going

north, Wilson south, and the cars came together about twenty feet beyond the south end of the bridge. The jury was justified in finding that O'Brien had been clear over on the west side of the road, until he saw Wilson's car come out from the bridge. Coming from the south the road runs almost east for some distance, and then turns on a radius of about sixty feet through an angle of about 70° to enter the bridge. The road is seventeen feet wide at the widest part of the turn and fourteen to fifteen elsewhere, and is protected by a fence because the ground slopes off sharply to the east. There is a down grade of about nine degrees approaching the bridge from the south, and the view to the left is somewhat obstructed until one gets fairly on the turn. O'Brien's car was going at only fifteen miles an hour (as to this there was curiously enough no dispute) but he did not blow his horn, or do anything to avoid collision until he saw Wilson emerge, when he swung sharply to the right so that the collision was between the left fore wheels of each car. Wilson swore that he was moving at two miles an hour, and that he blew a horn before entering the bridge. Any such speed is of course incredible, but the issue is not important, as his speed does not count in determining O'Brien's negligence. Only five or six families lived on the road, and the wheel tracks at the turn showed that it had been the custom to take it on the left side in order to make the turn more easily.

 The degree of care demanded of a person by an occasion is the resultant of three factors: the likelihood that his conduct will injure others, taken with the seriousness of the injury if it happens, and balanced against the interest which he must sacrifice to avoid the risk. All these are practically not susceptible of any quantitative estimate, and the second two are generally not so, even theoretically. For this reason a solution always involves some preference, or choice between incommensurables, and it is consigned to a jury because their decision is thought most likely to accord with commonly accepted standards, real or fancied. A statute like that before us presupposes that the answer to the general question has been against the defendant (that is, that his conduct has been inexcusable) but it imposes upon his liability a condition which cannot even be described in quantitative terms; not only

must the interest which he would have had to sacrifice be less than the risk to which he subjects others, but it must so far fail to match that risk that some opprobrium or reproach attaches to him. In Powers v. Wilson, 2 Cir., 110 F.2d 960, we had this statute before us, and thought this the most satisfactory approach to the solution of a problem, essentially self-contradictory, since it professes to set a quantitative standard for the measurement of incommensurable factors. The leading case in Vermont is Shaw v. Moore, 104 Vt. 529, 162 A. 373, 374, 86 A.L.R. 1139, the opinion in which has been often cited; the definition there given contains such descriptive phrases as "more culpable than ordinary negligence", "utter forgetfulness of legal obligations"; "heedless and palpable violation * * * respecting the rights of others"; "short of being such reckless disregard * * * as is equivalent to a willful and intentional wrong"; "culpability which characterizes all negligence * * * magnified to a high degree". Dessereau v. Walker, 105 Vt. 99, 102, 163 A. 632, 633, speaks of "culpability of an aggravated character"; Franzoni v. Ravenna, 105 Vt. 64, 163 A. 564, of "indifference to his duty to his guests or an utter forgetfulness of their safety"; a phrase repeated in Anderson v. Olson, 106 Vt. 70, 169 A. 781; L'Ecuyer v. Farnsworth, 106 Vt. 180, 170 A. 677; Garvey v. Michaud, 108 Vt. 226, 184 A. 712; and Ellison v. Colby, Vt., 8 A.2d 637. At times the court has been content merely with another phrase from Shaw v. Moore, supra, "failure to exercise even a slight degree of care". All these are indeed formally quantitative and probably that is unavoidable, but since no common measure is strictly possible, we think that our gloss is a fair one. The situations in which the court has allowed verdicts to stand or not, are so various that little can be drawn from them, as the court itself has repeatedly said. In Hall v. Royce, 109 Vt. 99, 192 A. 193, and Farren v. McMahon, 110 Vt. 55, 1 A. 2d 726, for example, we own that the negligence does not seem to us to have involved grave dereliction; quite as little as in Franzoni v. Ravenna, supra, 105 Vt. 64, 163 A. 564; L'Ecuyer v. Farnsworth, supra, 106 Vt. 180, 170 A. 677; or Garvey v. Michaud, supra, 108 Vt. 226, 184 A. 712. Uniformity being impossible, we are left to consider how loudly O'Brien's conduct cries for censure. See, also, our discussion

of a similar statute in Cusack v. Longaker, 2 Cir., 95 F.2d 304.

■ It is of course always careless to drive on the wrong side of the road on a curve, where one cannot see ahead; it is careless to do so even at so low a speed as fifteen miles; another car may be coming fast, and a collision may be inescapable. But few who have driven a motor, do not at times take the chance, when going slowly on a back country road; most of us rely more than we should upon our alertness to become aware of, and our deftness to avert, oncoming danger; we should not, but we do; and in the hierarchy of guilt such carelessness does not stand high. O'Brien conceded that he knew the spot well and that it ought to be taken at a "snail's pace" if another car was coming; what he did was to assume the risk, and it was not a great one. Nor was he so totally without excuse as in other situations which themselves would be border-line—a car climbing a hill on the wrong side, for example, which has no reason not to keep to the right; O'Brien was in a position where it saved him trouble to cut the curve. Had he been driving twice as fast, or on a much travelled highway, we might think otherwise; but on that road and at that speed it seems to us that his fault was only a routine dereliction, not grave enough to fall within the statute. It is plain from the Vermont decisions that we cannot properly devolve the entire responsibility for a decision upon a jury.

■ The defendant moved for a verdict at the close of the evidence, and the court denied it without reserving decision. Before the New Rules of Civil Procedure for District Courts, rule 50(b), 28 U.S.C.A. following section 723c, that would not have allowed us to dismiss the complaint under Baltimore & Caroline Line v. Redman, 295 U.S. 654, 55 S.Ct. 890, 79 L.Ed. 1636; but Rule 50(b) provides that when such a motion is denied at the close of the evidence, the judge is to be "deemed to have submitted the action to the jury subject to a later determination"; which is the equivalent of a reservation. It is not necessary that he should deny the motion once again; his failure to vacate his first order is enough. Hence it is proper here to dismiss the complaint. Leader v. Apex Hosiery Co., 3 Cir., 108 F.2d 71, 81; Massachusetts Protective Ass'n v. Mouber, 8 Cir., 110 F.2d 203, 207.

Judgment reversed; complaint dismissed.