558

**LOWDEN et al. v. BELL.**

**No. 12557.**

Circuit Court of Appeals, Eighth Circuit.

Oct. 11, 1943.

As Amended Nov. 19, 1943.

Thos. S. Buzbee and A. S. Buzbee, both of Little Rock, Ark., for appellants.

Paul X. Williams, of Booneville, Ark., and U. A. Gentry, of Little Rock, Ark., for appellee.

Before SANBORN and RIDDICK, Circuit Judges, and LEMLEY, District Judge.

LEMLEY, District Judge.

This is an appeal from a judgment for personal injuries alleged to have been received by the appellee while crossing the tracks of the Chicago, Rock Island & Pacific Railway Company in the city of Booneville, Arkansas.

At the close of the evidence the appellants, trustees of the railway company, moved for an instructed verdict. Their motion was overruled and they excepted. The refusal of the court to grant this motion is the only error urged on appeal.

The railroad, which is double tracked, runs east and west through the city. The tracks were laid in 1899 and now separate what is locally termed "New Town" from "Old Town," the former lying north and the latter south of the tracks. Both of these areas are platted into lots and blocks; the business section is in "New Town."

The injury complained of occurred between the double tracks and south of and not a great distance from a structure on the right of way north of and facing the tracks, termed by the witnesses in the case "the eating house," a part of which is used as a passenger depot. The location of "the eating house" will be later shown.

A rough plat of that part of the town in the neighborhood of the eating house, not drawn to scale, was introduced. From this and certain evidence in connection therewith the following appears: Directly north of and parallel to the right of way is Railroad Avenue, a street sixty feet wide. Perpendicular to this avenue and connecting with it on the north side is Bennett Street, eighty feet wide. If Bennett Street were projected directly south across the right of way, the eating house would obstruct something more than the east half of it and extend some further distance to the east. Bennett Street ends, however, at the northern edge of Railroad Avenue. One block east of Bennett Street and slightly less than a block east of the eating house is Broadway, which runs parallel to Bennett Street until it meets the right of way, which it intersects. North of the right of way Broadway is one hundred feet wide and runs north and south. South of the tracks it is thirty feet wide and angles slightly to the west. It is paved both north and south of the railroad. South of the right of way and one block west of and parallel to that part of Broadway south of the railroad is Rhyne Street, unpaved and thirty feet wide. This street has its northern end at the southern edge of the right of way, directly south of the eating house. No street corresponding to Railroad Avenue on the north parallels the

railroad on the south. If Rhyne Street were projected directly north it would cross the railroad, intersect Railroad Avenue, and run into the eastern side of the southern mouth of Bennett Street; and passage through Rhyne Street would be completely blocked by the eating house. The width of the eating house is not in evidence, but its southeast corner is some distance (also not shown) east of Rhyne Street.

West of the eating house is the freight depot. Until 1937, a hotel building, erected by the railroad company, was on the right of way a short distance east of the eating house. Since its removal the parcel of land lying between the eating house and Broadway has remained vacant, and there is a path leading from the intersection of Broadway and Railroad Avenue diagonally across this vacant lot to the southeast corner of the eating house, at which point there is a mailbox. A concrete walk sixteen feet or more in width extends from Broadway west along the northern edge of the tracks to a point some distance west of the eating house. This paved way is broadened in front of and on each side of the eating house and covers the entire space between it and the railroad tracks. The distance from the eating house to the tracks is not given.

Midway between the double tracks, in this immediate neighborhood, is a row of openings, each about two feet square, known as waterboxes, and having heavy removable metal covers. In these openings are connections with a water pipe to which hose is at times attached for the purpose of supplying water to railway coaches. These boxes, of which there are three or more, are from fifty to sixty feet apart. The exact distance is not shown.

About the year 1901, steps were taken by the city to open up a passageway connecting the northern end of Rhyne Street with the southern end of Bennett Street. A Mrs. Nichols, who owned a restaurant south of the railroad, claimed the fee to the land involved, and her rights were acquired by the city for that purpose. A railway fence north of the tracks was torn down by the city, and for some years pedestrians and horseback riders used this passageway in going from Rhyne to Bennett. It does not appear to have been used, except on rare occasions, by vehicles. Certain railroad buildings were located in this vicinity at the time, north of the tracks. Employees and patrons of the company ate at Mrs. Nichols' restaurant, and the railroad constructed across its tracks, in the passageway mentioned, a board walk, which remained there for some years, and which was used by these employees and patrons as well as the public generally. In 1910, the railroad erected the eating house now on the property. This blocked the passageway between Rhyne and Bennett Streets across the right of way, and thereafter pedestrians coming from the south "drifted," as expressed by one of appellee's witnesses, either east or west of the eating house, dependent upon just where they were going. After the eating house was constructed the railroad company removed the board walk across its tracks and filled in the space remaining with cinders. About four or five years prior to the trial of this case the cinders were removed and the roadbed ballasted with crushed rock, which condition now obtains. The elongated space between the double tracks in this area has been filled in by the company with gravel and cinders for its convenience. Since removal of the cinders which replaced the boardwalk above referred to, many pedestrians living in the neighborhood of Rhyne Street, in going into the business section of town, have continued to cross the railroad tracks at the mouth of Rhyne Street, both coming and going.

On the night of the injury complained of, the appellee with three other ladies living south of the tracks had attended a moving picture show on Broadway north of Railroad Avenue. In returning home they used the path which extends from the intersection of Railroad Avenue and Broadway diagonally across the vacant lot to the southeast corner of the eating house, but apparently just before reaching that corner crossed the pavement and cut at an angle across the railroad tracks toward the mouth of Rhyne Street. The evidence is not altogether clear as to just where the appellee entered upon the tracks, but it is apparent from the testimony that it was at a point east of the eastern line of Rhyne Street if projected across the right of way. One of the waterboxes mentioned had been left open. The appellee stepped into this box and was injured.

The case was submitted to the jury on the theory of a public crossing, the appellee contending that the box into which she stepped was in such a crossing and that

therefore the appellants owed her the duty of using ordinary care to maintain the way across the tracks in a safe condition. This position was controverted by the appellants. The result has been indicated.

It is the appellants' contention on this appeal that there is no substantial evidence in the record tending to show that a public crossing existed at the north end of Rhyne Street, but that if it is mistaken in this regard it still cannot be held liable because the proof shows that the appellee was injured outside of that crossing, and was therefore at the best a bare licensee to whom it owed no obligation of due care.

It is not necessary for us to pass on appellants' first contention, as the second is determinative of this appeal. Edward Ferguson, one of appellee's witnesses, who was at the mailbox at the southeast corner of the eating house at the time of her injury, and came to her aid and thereafter assisted in replacing the metal cover to the waterbox, testified as follows:

"Q. Mr. Ferguson, this box here where she fell is not the box that is right opposite Rhyne Street, is it? A. Well, there is two there.

"Q. Well, this plaintiff's Exhibit No. 5. That shows this box right in front of Rhyne? A. That is not the box. She didn't fall—

"Q. That is not the one she fell in? A. No, sir.

"Q. Not the one right in front of Rhyne Street? A. No, sir.

"Q. The one she fell in is this one which is the next one east of the one in front of Rhyne Street, isn't it? A. That would be just right east of the box.

"Q. That is east of Rhyne Street is where she fell, isn't it? A. That is the box I showed him.

"Q. She wasn't crossing the street— That box is not the one shown on the picture there right opposite Rhyne Street, the one she fell in? A. It wouldn't be the one going right straight across."

 Ferguson's testimony is undisputed, and settles the question of appellants' liability so far as this appeal is concerned. The appellee, at the time of her injury, was on the railroad company's right of way on business of her own in no way connected with that of the company. She was at best a bare licensee to whom the appellants owed no affirmative duty of care, since in going upon the tracks at the place she did she took her license with its concomitant perils. Arkansas Short Line v. Bellars, 176 Ark. 53, 2 S.W.2d 683; St. Louis, I. M. & S. R. Co. v. Pyles, 114 Ark. 218, 169 S.W. 799; Reed v. Baldwin et al., Trustees, Missouri Pacific R. R. Co., 192 Ark. 491, 92 S.W.2d 392; Chicago, R. I. & P. R. Co. v. Payne, 103 Ark. 226, 146 S.W. 487, 39 L.R.A.,N.S., 217; Chicago, R. I. & P. R. Co. v. McCauley, 196 Ark. 1177, 112 S.W.2d 625; Chicago, R. I. & P. R. Co. v. Harrison, 204 Ark. 361, 162 S.W. 2d 62; St. Louis, I. M. & S. Ry. Co. v. Fairbairn, 48 Ark. 491, 4 S.W. 50; St. Louis, I. M. & S. Ry. Co. v. Tomlinson, 69 Ark. 489, 64 S.W. 347; Arkansas & L. R. Co. v. Sain, 90 Ark. 278, 119 S.W. 659, 22 L.R.A., N.S., 910; St. Louis-San Francisco R. Co. v. Williams, 180 Ark. 413, 21 S.W.2d 611.

The appellee, however, insists that under the decision of the Supreme Court of Arkansas in Missouri Pac. R. Co., Thompson, Trustee, v. Newton, Ark., 168 S.W.2d 812, the opinion in which was delivered subsequent to the trial of the instant case, it is immaterial whether she was or was not in a public crossing at the time of her injury, since, under the doctrine laid down in that case, she was an invitee and not a licensee. The Newton case is not in point. In that case the plaintiff, while standing in a pathway near the station at Emmet, Arkansas, which had been used for many years by the public to cross from the east part of Main Street to the west part thereof, and while in the act of crossing over, was struck by a mail pouch thrown from a passing train; and the court, drawing an analogy between this pathway and a passageway constructed by a railroad across its tracks for the use of the public, held that the plaintiff was an implied invitee rather than a bare licensee or trespasser. In the instant case, if there is any evidence in the record to the effect that a well-defined pathway leads diagonally across the tracks, upon which point we do not pass, there is none to the effect that the waterbox in which the appellee was injured was in that path.

 Our conclusion is that the District Court erred in denying the appellants' motion for a directed verdict. Had the case been tried correctly, the appellants would have had a judgment in their favor determinative of the case. The fact that the appellants did not make a motion to set aside the verdict of the jury and for judgment

notwithstanding the verdict, as they might have done under Rule 50(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, does not preclude this Court from directing the trial court to enter the judgment to which the appellants were entitled under the evidence and the law. Lowden v. Denton, 8 Cir., 110 F.2d 274, 278, certiorari denied, 310 U.S. 652, 60 S.Ct. 1100, 84 L.Ed. 1417; Conway v. O'Brien, 2 Cir., 111 F.2d 611, 613, reversed on other grounds, 312 U.S. 492, 61 S.Ct. 634, 85 L.Ed. 969; United States v. Halliday, 4 Cir., 116 F.2d 812, 816, reversed on other grounds, 315 U.S. 94, 62 S.Ct. 438, 86 L.Ed. 711; Howard University v. Cassell, 75 U.S.App.D.C. 75, 126 F.2d 6, 12, certiorari denied, 316 U.S. 675, 62 S.Ct. 1046, 86 L.Ed. 1749.

The judgment appealed from is reversed, and the case is remanded with directions to enter a judgment for the appellants dismissing this case upon the merits.