612 So.2d 235 (1992)
Carl DAVIS, et al.
v.
LOUISIANA POWER & LIGHT COMPANY and Feliciana Apartments.
No. 92-CA-0082.
Court of Appeal of Louisiana, Fourth Circuit.
December 29, 1992.
Writ Denied April 2, 1993.
*236 Steven Lemoine, New Orleans, for plaintiffs-appellees Carl Davis, et al.
Monroe & Lemann, George F. Riess, Edward T. Meyer, Nora F. McAlister, New Orleans, for defendants-appellants Louisiana Power & Light Co., and Feliciana Apartments.
Before KLEES, LOBRANO, and JONES, JJ.
KLEES, Judge.
This appeal arises from an action involving injuries sustained through contact with an electrical transmission line. Plaintiffs, Craig Davis and Carl Davis instituted suit against Louisiana Power & Light Company (LP & L) for negligence in the installation and maintenance of a power line contacted with an aluminum ladder. From a jury verdict allocating the percentages of fault between the parties, both the plaintiffs and defendant appeal.
Craig Davis and Carl Davis were hired to paint the exterior of the Feliciana Apartment complex, which consisted of several three story buildings. While working on the second building, it became necessary for Craig Davis to reposition an aluminum extension ladder to reach an upper level. Usually, the workers only moved the ladder with the aid of a fellow worker, but on this particular occasion, Craig Davis moved the ladder unassisted. As the ladder was moved, it came into contact with an overhead electrical power line. When Carl Davis witnessed his brother being electrocuted, he ran to him and knocked both Craig Davis and the ladder away from contact with the line. As a result of this contact, Craig Davis' hands, feet, and legs were severely burned. Carl Davis also suffered injuries to his back and hands as a result of the rescue attempt.
Plaintiffs filed suit against Feliciana Apartments, a partnership in commendam, and LP & L, as owner and operator of the overhead electrical power line. Feliciana Apartments was exonerated from liability and judgment was cast in favor of Craig Davis and Carl Davis. Craig Davis' jury award was $74,000.00 (the total of $20,000.00 in general damages and $54,000.00 in special damages). However, this award was reduced to $17,760.00, according to the percentages of negligence apportioned by the jury. The jury attributed 49% of fault to Craig Davis, 24% to LP & L, and 27% to Doug Brown, Craig Davis' statutory employer.
The jury awarded Carl Davis $22,000.00 (the total of $9,000.00 in general damages *237 and $13,000.00 in special damages). However, because the jury apportioned 100% of the liability to Doug Brown in relation to Carl Davis' injuries, LP & L was exonerated from liability. It is from this jury verdict that both the plaintiffs and the defendant, LP & L, perfect this appeal. After reviewing the record and applicable law, we affirm the jury's allocation of liability in relation to Carl Davis' injuries. However, we find that LP & L is also free from negligence in relation to Craig Davis' injuries as a matter of law. Accordingly, we amend the jury's assessment of liability against LP & L from 24% to 0% in relation to Craig Davis' injuries.
In determining the liability of power companies, courts must apply general negligence principles rather than strict liability. Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982). Accordingly, plaintiff must prove not only that his injuries were caused by the transmission of electricity from the power company's line, but also that the risk which resulted in plaintiff's injuries was an unreasonable one and that the power company failed to comply with a duty or standard of care requiring it to take precautions against that danger. Levi v. Southwest Louisiana Electric Membership Cooperative (SLEMCO), 542 So.2d 1081 (La.1989). Because electric companies must maintain high power lines which are inherently dangerous, it has been stated that they are required to exercise utmost care but not required to guard against situations which cannot be reasonably expected or contemplated. Simon v. SLEMCO, 390 So.2d 1265 (La.1980).
The first inquiry of this court is to determine whether Craig Davis' accident could reasonably have been anticipated by LP & L. The facts clearly show that the power line contacted by Craig Davis was in full compliance with the industry standards set forth in the National Electric Safety Code (NESC). The NESC furnishes tables which specify the required vertical and horizontal clearances for overhead power lines depending upon the characteristics of area that the overhead line crosses. In the instant case, the NESC requires a 15 foot vertical clearance because the line is over an area where only pedestrian traffic is normally anticipated. The horizontal clearance specified is 5 feet. The actual power line is located 19.78 feet above the ground and 12.65 feet from the apartment building. Clearly, the clearances of the power line contacted by Craig Davis exceeded these NESC requirements.
However, initial compliance with the NESC does not preclude the finding of negligence. As a power company, LP & L also has a continuing duty to take appropriate measures when unreasonable risks are discovered. Aucoin v. Louisiana Power & Light Co., 490 So.2d 1088 (La.App. 3rd Cir.1986), writ denied, 491 So.2d 381 (La. 1986); Hebert v. Gulf States Utilities Co., 426 So.2d 111 (La.1983). In the instant case, the evidence shows that LP & L fulfilled this duty by conducting regular inspections of their lines to uncover and correct any defects. In addition, LP & L did not receive any reports of similar accidents occurring at the Feliciana Apartment complex to put then on notice that there was a problem at that location. Thus, LP & L had no actual or constructive knowledge that the location or the method of construction of the line at the Feliciana Apartments was presenting an unreasonable risk of harm.
The remaining negligence issue is whether the possibility of the injury or loss suffered by the plaintiff constituted an unreasonable risk of harm. See, Levi, supra. This determination requires a focus upon the essential negligence balancing process, which is provided by the following formula:
(1) the possibility that the electricity will escape; (2) the gravity of the resulting injury, if it does; and (3) the burden of taking adequate precautions that would avert the mishap. When the product of the possibility of escape multiplied times the gravity of the harm, if it happens, exceeds the burden of precautions, the failure to take those precautions is negligence.
Levi, supra at 1086, citing L. Hand, J., in Conway v. O'Brien, 111 F.2d 611, 612 (2d Cir.1940); Allien v. Louisiana Power & *238 Light Co., 202 So.2d 704 (La.App. 3rd Cir. 1965).
Louisiana courts have applied this test under a similar situation in Washington v. Louisiana Power & Light, 555 So.2d 1350 (La.1990). In Washington, the plaintiffs filed suit against the LP & L following the death of their father which occurred when the decedent contacted an overhead power line with his citizensband radio antenna. In applying the balancing test, the Washington Court concluded:
... although there was a cognizable risk that the antenna stationed in the corner of Mr. Washington's backyard could be lowered and moved within a dangerous proximity of the power line, that possibility could not be characterized as an unreasonable risk and the power company's failure to take additional precautions against it was not negligent.
Id. at 1352.
In finding the power company free from liability, the Washington Court noted that the decedent's accident was not reasonably foreseeable because the decedent was aware of the presence of the power line and its danger. The court further determined that even though the gravity of the injury was extreme, the degree of gravity multiplied by the slight possibility of the accident occurring in that case did not outweigh the burdens or costs of relocating or insulating the power line.
Likewise, in the instant case, the evidence establishes that a possibility of an accident of this nature was slight. LP & L was unaware of the exterior work being done at the Feliciana Apartment complex. Furthermore, Craig Davis was aware of the presence and danger of the overhead power line near the apartment complex and the specific dangers associated with the use of aluminum ladders near power lines. This fact is supported by the testimonies of the plaintiffs and their co-workers that they discussed the presence of the overhead lines and repeatedly warned one another of the dangers of the line prior to the accident. In addition to the verbal warnings, Craig Davis' ladder had an explicit notice warning users of the dangers of aluminum ladders and overhead lines. The actions of the workers also indicated that they were acutely aware of the lines and their dangers: Carl Davis re-wrapped the top of his ladder with newspaper and tape to prevent the conduction of electricity if accidently contacted with the overhead line, and the workers established the practice of only moving the ladders with two people as a safety measure. However, at the time of the accident, Craig Davis was handling the ladder without assistance.
Under these circumstances, there was not a significant possibility that the plaintiff would carelessly move an aluminum ladder in close proximity to the power line at the Feliciana Apartment complex. Craig Davis' argument that this accident occurred because of an unreasonable risk of harm created by LP & L is meritless because Craig Davis, a hired painter, had full knowledge of the danger involved, yet failed to appreciate this danger due to momentary inadvertence. In Dobson v. Louisiana Power & Light Co., 567 So.2d 569 (La.1990), the Supreme Court of Louisiana defined the duty of one who works around electrical lines:
... A reasonable person who has an ordinary amount of exposure to the facts of modern life in America should be treated as though he knows that any electrical line could be dangerous. (Citations omitted.) In addition to the knowledge with which people generally may be charged, any reasonably prudent person who engages in an occupation ... which requires that he work close to electric lines is under a peculiar obligation to acquire the knowledge and ability required to identify uninsulated power lines and to take precautions against the extreme dangers they pose. (Citations omitted.)
Id. at 573.
Craig Davis, a hired painter, was under this "peculiar" obligation to acquire the knowledge and ability to identify uninsulated power lines and to take precautions against the extreme dangers they pose. This obligation was obviously breached by Craig Davis' inadvertent behavior that was observed by a witness immediately prior to *239 the accident. The fact that the power lines at the Feliciana Apartment complex did not present an unreasonable risk of harm is supported by the fact that the painting was later safely completed. Thus, a person exercising reasonable care could have safely performed the job being attempted by the plaintiff at the time of his accident.
In conclusion, when the principles set forth in Washington are applied, we find that even though the gravity of injury was extreme, the product of the degree of gravity and the slight possibility that Craig Davis would negligently maneuver an aluminum ladder into the overhead lines does not outweigh the burdens of relocating or insulating the power line. Therefore, LP & L should be exonerated from liability in relation to Craig Davis' injuries as well as Carl Davis' injuries.
On appeal, plaintiffs also argue that the trial judge erred in denying the plaintiff's request to introduce reports of prior accidents involving the contact between aluminum ladders and LP & L overhead power lines. Plaintiffs assert that the denial was in error because there are three reports of accidents that occurred when persons using aluminum ladders at a nearby apartment complex came into contact with overhead power lines, which would demonstrate that LP & L knew or should have known of the potential danger at the Feliciana Apartment complex.
Evidence of prior accidents is admissible for the limited purpose of showing that a thing or place was dangerous and the defendant knew of the dangerous condition. However, the prior accidents must be closely related in circumstance to the injury or hazard at issue. Creppel v. Louisiana Power and Light Co., 514 So.2d 239 (La.App. 5th Cir.1987), writ denied, 516 So.2d 131 (La.1987). In Lee v. K-Mart Corp., 483 So.2d 609, 613 (La.App. 1st cir. 1985), writ denied, 484 So.2d 661 (La.1986), the First Circuit summarized the criteria as follows:
... Thus, to be relevant the other accident should occur at substantially the same place and under substantially the same conditions and must be caused by the same or similar defect, danger, act or omission. Evidence of other accidents occurring at substantially different places or under different circumstances or conditions is irrelevant and inadmissible.
Id. at 613.
In the instant case, the prior accident evidence which the plaintiffs sought to introduce was not substantially similar to the present accident for several reasons. First, the prior accidents did not occur at the Feliciana Apartment complex, but rather at another nearby complex, the Harbour Apartments. Second, the workers injured in the prior accidents were conducting a variety of activities unrelated to painting, such as air conditioning repair and roofing; and finally, the configuration of the lines at the Harbour Apartments is substantially different from the configuration at the Feliciana Apartments. The Harbour Apartments are serviced through underground electric lines, with the exception of one overhead three-phase line. It was the overhead three-phase line that was involved in the prior accidents. However, the line involved at the Feliciana accident was a single-phase overhead line in a complex with all overhead lines. Because the line configurations at the two apartment complexes are substantially different, an accident at the Harbour Apartments could not have put LP & L on notice of an unreasonable risk of harm at the Feliciana Apartments.
Louisiana jurisprudence establishes that the admissibility of evidence of prior accidents is confined to those involving substantial identity of circumstance because of the risk of prejudice associated with informing a jury of other accidents. Because the prior accidents that the plaintiffs want to introduce are similar in neither place, condition, nor circumstance, the trial court properly excluded evidence of them.
For the forgoing reasons, we affirm the jury verdict in part, and amend the jury's assessment of liability attributed to LP & L in relation to Craig Davis' injuries, thereby exonerating LP & L from liability as to both Craig Davis and Carl Davis.
*240 AFFIRMED IN PART, AMENDED IN PART, AND AFFIRMED AS AMENDED.